1  HAYNES AND BOONE, LLP
   Jennifer M. Lantz (Bar. No. 202252)
2    jennifer.lantz@haynesboone.com
   525 University Ave, Ste 400
3  Palo Alto, CA 94301-1918
   (650) 687-8820

4  HAYNES AND BOONE, LLP
   Kenneth G. Parker (Bar No. 182911)
5    kenneth.parker@haynesboone.com
   Diana C. Obradovich (Bar No. 312633)
6    diana.obradovich@haynesboone.com
   600 Anton Blvd., Suite 700
7  Costa Mesa, California 92626
   (949) 202-3000
8
   Attorneys for Plaintiff
9  TABLE DE FRANCE, INC.

SNELL & WILMER L.L.P.
Jeffrey M. Singletary (Bar No. 233528)
  jsingletary@swlaw.com
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626
(714) 427-7000

BRADLEY ARANT BOULT
CUMMINGS, LLP
Jason E. Fortenberry (*pro hac vice*)
  jfortenberry@bradley.com
Michael C. Williams (*pro hac vice*)
  mcwilliams@bradley.com
188 E Capital Street
Jackson, MS 39201

Attorneys for Defendant
DBC Corporation

10

11            **UNITED STATES DISTRICT COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

13  TABLE DE FRANCE, INC., a          Case No.:  5:19-CV-00423-JGB-KK
14  Delaware corporation,
                                      **JOINT STIPULATION**
15              Plaintiff,            **REGARDING PLAINTIFF TABLE**
                                      **DE FRANCE, INC.'S MOTION TO**
16      vs.                           **COMPEL FURTHER RESPONSES**
                                      **TO INTERROGATORIES AND**
17  DBC CORPORATION, a Mississippi    **PRODUCTION OF DOCUMENTS**
18  corporation, and DOES 1-20, inclusive, **RELATED TO JURISDICTIONAL**
                                      **DISCOVERY**
19              Defendants.
20                                    Date:      July 11, 2019
21                                    Time:      10:00 a.m.
                                      Location:  Ctrm 3
22                                    Judge:     Hon. Kenly Kiya Kato
23
24                                    Complaint Filed:  March 7, 2019
                                      Discovery Cutoff: None
25                                    Pretrial Conference: None
26                                    Trial Date:  None
27
28

TABLE OF CONTENTS

I. INTRODUCTORY STATEMENTS .................................................. 1

  A. TDF's Introductory Statement and Factual Background............................ 1

  B. DBC's Introductory Statement and Factual Background. .......................... 4

II. LEGAL STANDARD ...................................................................... 7

  A. TDF's Statement of the Legal Standard ......................................................7

    1. The Elements of Personal Jurisdiction ......................................................7

    2. Legal Standards Related to Discovery ...................................................... 8

  B. DBC's Comments Regarding the Legal Standard.................................... 8

III.   ISSUES IN DISPUTE ................................................................11

  A. Requests for Production ...........................................................................11

    1. Request for Production No. 1 ..............................................................11

      a. TDF's Contentions Regarding Request for Production
         Number 1..............................................................................................12

      b. DBC's Contentions Regarding Request for Production
         Number 1..............................................................................................15

    2. Request for Production No. 2 ..............................................................18

      a. TDF's Contentions Regarding Request for Production
         Number 2..............................................................................................18

      b. DBC's Contentions Regarding Request for Production
         Number 2..............................................................................................20

    3. Request for Production No. 4 ...............................................................23

a.  TDF's Contentions Regarding Request for Production
Number 4......................................................................................24

b.  DBC's Contentions Regarding Request for Production
Number 4......................................................................................26

4.  Request for Production No. 5. ...........................................................29

a.  TDF's Contentions Regarding Request for Production
Number 5......................................................................................30

b.  DBC's Contentions Regarding Request for Production
Number 5......................................................................................31

5.  Request for Production No. 6. ...........................................................32

a.  TDF's Contentions Regarding Request for Production
Number 6......................................................................................32

b.  DBC's Contentions Regarding Request for Production
Number 6......................................................................................33

6.  Request for Production No. 7 ............................................................34

a.  TDF's Contentions Regarding Request for Production
Number 7......................................................................................35

b.  DBC's Contentions Regarding Request for Production
Number 7......................................................................................36

7.  Request for Production No. 8 ............................................................37

a.  TDF's Contentions Regarding Request for Production
Number 8......................................................................................37

b.  DBC's Contentions Regarding Request for Production
Number 8......................................................................................38

JOINT STIPULATION REGARDING PLAINTIFF TABLE DE FRANCE, INC.'S MOTION TO
COMPEL

8.  Request for Production No. 10 [sic 9]...................................39

a.  TDF's Contentions Regarding Request for Production
    Number 10.........................................................................40

b.  DBC's Contentions Regarding Request for Production
    Number 10.........................................................................41

B.  Responses to Interrogatories ......................................................44

1.  Interrogatory No. 2 .....................................................................44

a.  TDF's Contentions Regarding Interrogatory Number 2...............45

b.  DBC's Contentions Regarding Interrogatory Number 2..............47

2.  Interrogatory No. 3 .....................................................................50

a.  TDF's Contentions Regarding Interrogatory Number 3...............50

b.  DBC's Contentions Regarding Interrogatory Number 3..............51

3.  Interrogatory No. 5 .....................................................................52

a.  TDF's Contentions Regarding Interrogatory Number 5...............53

b.  DBC's Contentions Regarding Interrogatory Number 5..............54

4.  Interrogatory No. 6 .....................................................................57

a.  TDF's Contentions Regarding Interrogatory Number 6...............58

b.  DBC's Contentions Regarding Interrogatory Number 6..............58

IV.  CONCLUDING STATEMENTS ................................................61

A.  TDF's Conclusion..........................................................................61

B.  DBC's Conclusion .........................................................................62

1   Pursuant to Local Rule 37-2, Plaintiff Table de France, Inc. ("TDF") and
2   Defendant DBC Corporation ("DBC") respectfully submit this Joint Stipulation
3   Regarding TDF's Motion to Compel.

4   Pursuant to Local Rule 37-2.1, the Court's order establishing deadlines for
5   limited discovery regarding personal jurisdiction and a continuance of the hearing
6   date on DBC's motion to dismiss or transfer and the amendments thereto are
7   attached this stipulation. *See* Exs. A-I.

8   **I.   Introductory Statements**

9   **A.   TDF's Introductory Statement and Factual Background.**

10   DBC has filed a motion to dismiss for lack of personal jurisdiction in this
11   case.  (Doc. No. 11.)  In that motion, DBC presented no evidence regarding its
12   contacts with California, instead electing to force TDF to carry its burden of proof.
13   (*Id*.)  TDF has obtained permission from Judge Bernal to conduct discovery
14   regarding jurisdiction.  (Doc No. 18; Exs. A-B.)  TDF has served that discovery,
15   but DBC has not provided all the information TDF has sought.  TDF now seeks an
16   order compelling production of the information and documents that DBC has
17   selectively withheld.  Specifically, TDF seeks the following categories of
18   information:  DBC's communications and agreements with businesses
19   incorporated or headquartered in California, detailed information relating to sales
20   in California, trademark-related activities in California, licensing agreements with
21   companies headquartered or incorporated in California, indemnity agreements with
22   companies headquartered or incorporated in California, more detailed information
23   related to participation in trade shows in California, and information related to
24   business travel to California.

25   The Court's order allowed TDF to do the following:

26   1.   Serve up to ten written interrogatories and ten requests for production
27        of documents;

28   2.   Take a limited Rule 30(b)(6) deposition of DBC;

1

3.     Serve subpoenas on third parties identified by TDF, in good faith, and take limited depositions of such third parties.

(Doc. No. 18.)

TDF served seven written interrogatories and nine requests for production on DBC on April 24, 2019.  Two days before its responses were due, DBC requested a one-week extension of the Court-ordered response date based on the travel schedule of DBC personnel.  TDF agreed and obtained court approval of that extension, including a continuance of the hearing date on the motion to dismiss. (Doc. No. 21.)

Despite obtaining an extension of its response deadline, DBC failed to provide sufficient responses.  DBC refused to respond to a number of TDF's interrogatories and refused to produce documents requested in TDF's requests for production.  For the first time, and after having remained mum while requesting its extension, DBC objected to the requests on the basis of confidentiality.  DBC made this objection despite the fact that a sample protective order to address such issues is clearly posted on this Court's webpage.  After some discussion, DBC agreed to enter into a Stipulated Protective Order with "Confidential" and "Highly Confidential" categories, and the Protective Order was lodged with the Court on May 23, 2019.  (Doc. No. 23.)  On May 28, 2019, the Court entered the Stipulated Protective Order. (Doc. No. 24.)

Since coming to an agreement on the Stipulated Protective Order, DBC has not produced any additional information or indicated that it intends to produce any of the documents or information requested by TDF.  In light of DBC's resistance, and given the expedited schedule, TDF performed its own research as to possible California contacts of DBC.  TDF served third-party subpoenas on the California-based grocery stores and grocery distributors that it found sells the DBC product embodying the trademark it is attempting to enforce, requesting the production of documents, including agreements with DBC, which establish California

connections.  DBC moved to quash all of these subpoenas one day before the production deadline and even having filed the Stipulated Protective Order.

DBC's last refuge for refusing to provide information is its view of relevance based on its excessively constricted view of the case law regarding personal jurisdiction in the context of a claim for declaratory relief.  DBC has asserted the narrowest possible view of the law and tried to cabin discovery based on that view.  There are two problems with DBC's position.  First, as TDF shows below, the range of information relevant to personal jurisdiction in this context is much broader than DBC contends.  Second, and equally as important, the law in the Ninth Circuit with respect to personal jurisdiction over a declaratory relief defendant in the context of a claim arising out of alleged trademark infringement is unsettled.  Although there are various cases providing some guidance on the issue, they are mostly non-binding cases from district courts and other circuits, and they are not substantially similar to the fact pattern presented here.  Thus, this Court will be writing on a virtually blank slate.  It is not clear what standard this Court will eventually apply, what contacts this Court will deem most relevant, or what agreements between DBC and its customers in California the Court will find persuasive.  TDF has a right to a degree of latitude to present the Court the full picture of DBC's California contacts.

As explained in more detail below, DBC's objections to providing the identity of its customers that are based in California (on an outside attorney's eyes only basis if they wish) is improper, and DBC should be required to respond to all interrogatories and produce all documents responsive to the question of whether DBC is subject to personal jurisdiction in California.  Specifically, DBC should provide the following categories of information:  DBC's communications and agreements with businesses incorporated or headquartered in California, information relating to sales in California, trademark-related activities in California, licensing agreements with companies headquartered or incorporated in

1    California, indemnity agreements with companies headquartered or incorporated in

2    California, information related to participation in trade shows in California, and

3    information related to business travel to California.

4    **B.     DBC's Introductory Statement and Factual Background.**

5    This declaratory judgment action was initiated by Table de France, Inc.

6    ("TDF") on March 7, 2019 [Doc. 1], in response to a cease-and-desist letter sent by

7    D.B.C. Corporation, Inc. ("DBC"), requesting that TDF stop infringing DBC's

8    federally registered and protected trademark rights.[1]   The dispute landed in this

9    Court only because of TDF's foul play.   After DBC's cease-and-desist letter, the

10   parties engaged in a series of email and telephone correspondence over several

11   months aimed at ultimately trying to resolve the dispute.   *See* Decl. of J.

12   Fortenberry, Exhibit J.   Unbeknownst to DBC at the time, TDF was only feigning

13   interest in settlement talks as a diversion while it prepared and filed its anticipatory

14   complaint here to head off DBC's imminent infringement suit in another forum,

15   which DBC filed in Mississippi on March 8, 2019.

16   DBC filed its Motion to Dismiss the instant case on April 2, 2019 [Doc. 11]

17   seeking dismissal for two reasons:   (1) the exercise of personal jurisdiction over

18   DBC in this instance is improper; and (2) because TDF's anticipatory filing was

19   made in bad faith, and is forum shopping.   DBC's position on personal jurisdiction

20   focuses on the nature of TDF's complaint, which seeks a declaration of non-

21   infringement of DBC's trademark.   TDF's complaint was triggered solely by

22   DBC's cease-and-desist letter and DBC's imminent enforcement lawsuit in

---

[1] DBC currently owns U.S. Trademark registrations (No. 1,634,930) for the use of a helical line formed in and extending the length of a cylindrical cookie in which a color which contrasts the cookie, in connection with the marketing, sale and distribution of its premium specialty rolled cookie products. *See* Exhibit J-A. TDF sells and offers for sale a similar rolled wafer cookie product under the name "Filled Rolled Wafers," which, like DBC's Pirouline, exhibits a helical stripe (and, more recently, two helical stripes) extending the length of a cylindrical cookie, in a color which contrasts the cookie. *Id.*

Mississippi. The central purpose of TDF' declaratory judgment action is to clear the air of infringement charges against it arising out of its own conduct, and which emanate from another jurisdiction.  TDF's action does not arise from any alleged tortious conduct of DBC, nor does it result from any contract between DBC and TDF.  Instead, TDF's declaratory judgment action arises from and is a result of its own alleged tortious conduct. The only actions of DBC that are conceivably relevant to a personal jurisdiction determination on those claims are its efforts to police and enforce its trademark rights *vis a´ vis* TDF.  The nature and scope of those efforts are not in dispute, nor is the fact that those efforts arose from Mississippi.  DBC sending a cease and desist letter into California does not create a connection between DBC and California sufficient to establish personal jurisdiction.

In response to DBC's motion to dismiss, which centers on a question of law, TDF sought unnecessary jurisdictional discovery, and proposed a truncated schedule that was unworkable by any reasonable standard, particularly given the scope of the documents and information requested.   DBC advised TDF of its opposition to jurisdictional discovery by email on April 17, 2019, and suggested that the threshold issue of subject matter jurisdiction should first be decided. Exhibit K.  Nonetheless, TDF pressed forward with its *ex parte* application [Doc. 16], which DBC opposed [Doc. 17].

TDF's application was granted on April 23, 2019 [Doc. 18], and what followed were essentially merits-based discovery requests, which, although limited in number, were vastly overbroad, unrestricted in time and scope, and far from being narrowly tailored to the issue of personal jurisdiction.  As an example, TDF's first interrogatory seeks every piece of correspondence to, from, or relating to DBC or its attorneys, throughout the globe since the inception of the company, without regard to whether such correspondence is related to the actual DBC trademark that TDF is infringing, or whether the correspondence relates to actual

business or trademark enforcement activity by DBC in California. *See* Exh. E. Most of TDF's other requests suffer from these same deficiencies, and are nothing more than attempted harassment, or, at best, a fishing expedition. *See* Exhs. D – E.

Despite its objections, DBC has produced nearly 300 pages of data detailing sales of its product to customers in California since 2014, as well as travel logs documenting business trips by DBC representatives to California since 2012, including trips made to trade shows in the State and any supporting documentation it could locate. TDF now possesses a wealth of information about DBC's sales and other business activity in California sufficient to analyze DBC's contacts with the forum, but claims that it should be allowed to proceed further with its open-ended discovery efforts. DBC agrees that the entry of the stipulated protective order resolves some of its confidentiality concerns, but the threshold issue of relevance still remains. Contrary to TDF's assertion, courts in this circuit and this district have addressed the issue of personal jurisdiction over a declaratory relief defendant in a non-infringement action, and have confirmed sending a cease and desist letters into a state is not sufficient to subject a declaratory judgment act defendant to personal jurisdiction in that state. Moreover, decisions from the Federal Circuit, and from this Court applying Federal Circuit law have confirmed that, under the "but for" analysis announced in *Calder v. Jones*, 465 U.S. 783 (1984), the only other potentially relevant contacts between a defendant and the forum state in an action for a declaration of non-infringement are enforcement actions or obligations aimed at the infringing plaintiff, since those contacts are what serve as the actual the basis for the declaratory judgment complaint. Consequently, TDF should not, in this limited jurisdictional inquiry, be afforded any "degree of latitude" to explore the blueprints for DBC's entire business.

/ / /

/ / /

/ / /

JOINT STIPULATION REGARDING PLAINTIFF TABLE DE FRANCE, INC.'S MOTION TO COMPEL

## II. Legal Standard

### A. TDF's Statement of the Legal Standard

#### 1. The Elements of Personal Jurisdiction

A defendant is subject to personal jurisdiction in a state "if it is permitted by a long-arm statute and if the exercise of jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Because California's "long-arm" statute extends jurisdiction to the maximum extent permitted by due process, the jurisdictional inquiries under state law and constitutional due process can be conducted simultaneously. *See* Cal. Civ. Proc. § 410.10. The Fourteenth Amendment Due Process Clause requires that an out-of-state defendant have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific. General jurisdiction exists when the defendant's activities within the forum state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

To determine whether specific jurisdiction may be exercised over non-resident defendant, the Ninth Circuit uses a three-part test that is consistent with due process principles: "(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair

1    play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred*

2    *Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

3                    **2.      Legal Standards Related to Discovery**

4            The Federal Rules of Civil Procedure provide that "[p]arties may obtain

5    discovery regarding any nonprivileged matter that is relevant to any party's claim

6    or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

7    "Evidence is relevant if: (a) it has any tendency to make a fact more or less

8    probable than it would be without the evidence; and (b) the fact is of consequence

9    in determining the action." Fed. R. Evid. 401.

10           Information within the scope of discovery under Rule 26 "need not be

11   admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "The scope

12   of discovery permissible under Rule 26 should be liberally construed; the rule

13   contemplates discovery into any matter that bears on or that reasonably could lead

14   to other matter that could bear on any issue that is or may be raised in a case."

15   *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal.

16   2008) (citing *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular*

17   *Sys., Inc.*, 237 F.R.D. 618, 621 (N.D. Cal. 2006)). In view of the liberal rules on

18   discovery, when arguments concern unsettled areas of the law, courts have allowed

19   wide discretion in discovery. *See, e.g.*, *Owens-Brockway Glass Container v.*

20   *Seaboard Surety Co.*, CIV. S–91–1044 DFL, 1992 WL 696961, at *1 (E.D. Cal.

21   May 27, 1992) ("[I]n view of the liberal rules on discovery, the court is not

22   prepared to find the disputed areas of inquiry beyond the scope of Fed. R. Civ.

23   Proc. 26."). This broad scope of permissible discovery is limited by any relevant

24   privileges, including the attorney-client privilege. *See* Fed. R. Civ. P. 26(b)(1).

25   Any recognition of a privilege should be reviewed on a case-by-case basis and

26   weighed against the public interest. *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996).

27           **B.      DBC's Comments Regarding the Legal Standard**

28           DBC does not dispute TDF's general remarks concerning personal

jurisdiction.  However, those remarks omit essential principles of application that DBC deems incumbent to discuss.  Recent Supreme Court precedent has clarified that the exercise of general jurisdiction over a corporate defendant is closely circumscribed.  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)); *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("*Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation").  Importantly, "the placement of a product into the stream of commerce" does not by itself "warrant a determination that . . . the forum has general jurisdiction over a defendant." *Daimler*, 571 U.S. at 134.  "[T]he paradigm forum for the exercise of general jurisdiction" over a corporation are its "place of incorporation and principle place of business." *Id.*  "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez*, 764 F.3d at 1070 (citing *Daimler*, 571 U.S. 139 n.19).

As TDF recognizes, in order for the court to assert specific jurisdiction over a nonresident defendant, "the litigation 'must arise out of contacts that the defendant [it]self creates with the forum State.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (some internal quotations omitted)).  Moreover, the connection between the defendant's "suit-related conduct" and the forum State must be "substantial." *Id.* (quoting *Walden*, 134 S. Ct. at 1121).  "When there is no such connection, specific jurisdiction is lacking **regardless of the extent of a defendant's unconnected activities in the State**." *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (emphasis added); *accord Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662 (9th Cir. 2018).  "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those

1    sales." *Goodyear*, 564 U.S. at 931 n.6.

2        Due to the nature of an action for a declaratory judgment of non-

3 infringement—the central purpose of which is to clear the air of infringement

4 charges against it arising out of its own conduct—the jurisdictional inquiry focuses

5 on the defendant's enforcement actions in the forum state.  When, as here, the

6 claim is a request for a declaration of noninfringement, "the contacts at issue are

7 cease-and-desists letters that charge [the plaintiff] with infringement."  *Red Wing*

8 *Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir.

9 1998).  Cease-and-desist letters sent to a potential infringer, "by themselves or

10 coupled with offers to license, are insufficient to establish the second prong of the

11 Due Process inquiry, even where the recipient sues for declaratory relief as a direct

12 response to those letters." *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, No.

13 SACV 07-846-MRP ANX, 2008 WL 7071464, at *4 (C.D. Cal. Jan. 17, 2008)

14 (citing *Redwing Shoe*, 148 F.3d at 1360), *aff'd*, 566 F.3d 1012 (Fed. Cir. 2009).

15        Other contacts with the forum state are sufficient to support the exercise of

16 personal jurisdiction in an action for a declaratory judgment of non-infringement

17 only where those contacts are related to the defendant's enforcement actions or

18 enforcement obligations in relation to its intellectual property and, specifically,

19 whether those actions or obligations are taken, or required to be taken, in the forum

20 State, such as the one giving rise to the declaratory action.  *See, e.g.*, *Red Wing*

21 *Shoe*, 148 F.3d at 1360-62 (specific jurisdiction over defendant was lacking

22 because none of defendant's license agreements with in-state licensees required it

23 to pursue infringement actions involving subject patent); *Akro Corp. v. Luker*, 45

24 F.3d 1541 (Fed. Cir. 1995); *Vacless Sys., Inc. v. Vac-Alert IP Holdings, LLC*, No.

25 CV210CV09284SVWFFM, 2011 WL 13217924, at *7-9 (C.D. Cal. June 24,

26 2011); *Cognex Corp. v. Lemelson Med., Educ. & Research Found., Ltd. P'ship*, 67

27 F. Supp. 2d 5, 8-9. (D. Mass. 1999).  In this context, the defendant's product sales

28 or other business contacts within the forum State, even if substantial, are irrelevant,

if they have no connection to the instant declaratory suit.  *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, No. SACV 07-846-MRP ANX, 2008 WL 7071464, at *9 (C.D. Cal. Jan. 17, 2008), *aff'd*, 566 F.3d 1012 (Fed. Cir. 2009).  Similarly, "other licensing activities with in-state entities, even if substantial, are generally insufficient for specific jurisdiction unless they create exclusive relationships between the [intellectual property holder] and residents of the forum."  *Id.* at *4.

The scope of jurisdictional discovery is limited to the defendant's contacts with the forum State that provide a basis for jurisdiction.  "[A] refusal [to grant discovery] is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction."  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citation and internal quotations omitted).

## III.   Issues in Dispute

### A.   Requests for Production

#### 1.   Request for Production No. 1

REQUEST FOR PRODUCTION NO. 1:

ALL DOCUMENTS related to, reflecting, or evidencing the sale of any of the PRODUCTS in California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

DBC objects to this request because it is overly broad, unduly burdensome, vague, not limited in time/scope or proportional to the needs of the case, and irrelevant to the issue of personal jurisdiction because it includes information relative to third parties or others that have nothing to do with DBC. DBC further objects to this request because it seeks information which is not in the possession, custody and control of DBC, and to the extent it seeks information protected by the attorney-client privilege, work product doctrine or other privilege. DBC further objects to this request to the extent it seeks identification of DBC customers, pricing information, profit margins, or other similar proprietary and confidential

1   business information, which is irrelevant to the issue of personal jurisdiction and

2   otherwise subject to an appropriate protective order.

3        Subject to its objections, DBC states that it has limited its search to general

4   sales data for the PRODUCTS sold to California-based customers from 2014 to

5   present, which is being produced herewith as documents labelled DBC 000001-

6   000292. The customer names, shipping addresses and sales dollar amounts have

7   been redacted, as proprietary and confidential business information.

8           **a.**     **TDF's Contentions Regarding Request for Production**

9                   **Number 1**

10       Although DBC produced documents showing the "general sales data for

11  PRODUCTS sold to California-based customers," it redacted the identity of the

12  customers to which it sold its products.  In doing so, DBC asserts that the identity

13  of its California customers is irrelevant to the issue of personal jurisdiction and

14  thus is not discoverable.  However, the scope of relevance that DBC is asserting is

15  unreasonably narrow.  The nature, consistency, quality, and extent of DBC's

16  California contacts, including the identities of those contacts and their shipping

17  addresses, are directly relevant to the issue of personal jurisdiction, specifically the

18  issues of whether it is fair to hail DBC into court here and the nexus between the

19  products' trade dress, DBC's efforts to enforce that trade dress, and its demands to

20  TDF.[2]

21       TDF believes, and intends to assert to this Court in its opposition to DBC's

22  motion to dismiss, that the systematic sale by DBC of its products to California

23  customers supports the proposition that it is fair to force DBC to litigate here.  The

24  quality, consistency, and specifics of those sales (absent price and terms) is

25  important to show the systematic nature of DBC's contacts.

26       In addition, those California sales and contacts are relevant to the issue of

27

28

---

[2] TDF has informed DBC in the meet and confer process that TDF consents to the redaction of the product pricing, profit margin, and sales term information (*e.g.*, discounts or "net" versus discounted terms).

the nexus between the demand letter DBC sent TDF and the trade dress DBC is asserting TDF infringes.  Because this is a trade dress case, the sale of products embodying that trade dress is *necessary* for a trade dress owner, such as DBC, to maintain its rights in that trade dress.  *See* 15 U.S.C. § 1051 (trademark protection requires "use in commerce"); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012) ("[A] party pursuing a trademark claim must meet a threshold 'use in commerce' requirement.").

The fact that a trade dress owner must sell a product embodying the trade dress to maintain its rights distinguishes this trademark case from cases like *Juniper Networks, Inc. v. SSL Services, LLC*, No. C 08–5758 SBA, 2009 WL 3837266 (N.D. Cal. Nov. 16, 2009).  *Juniper* dealt with patent rights.  It is not necessary to sell a product embodying a patent to enforce a patent.  3 McCarthy on Trademarks and Unfair Competition § 16:11 ("Unlike patent law, rights in trademarks are not gained through discovery or invention of the mark, but only through actual usage.").  Thus, the sale of a product embodying a patent has no nexus with a patent enforcement proceeding.  But in trade dress cases, there is a direct nexus between use in commerce, ability to enforce, and the likelihood of confusion analysis.

Furthermore, directing activities related to the trademark at California residents is also relevant to the personal jurisdiction issue.  *See Delphix Corp. v. Embarcadero Techs., Inc.*, 749 Fed. Appx. 502, 506 (9th Cir. 2018) (finding that defendant's conduct was directed at plaintiff in California when the defendant challenged plaintiff's right to use its mark during settlement talks in California); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (concluding that the defendant's actions were "expressly aimed" at California because the defendant "knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers").  In *Solar Gear Inc. v. Sunglass Hut*

1   *International Inc.*, the plaintiff sought, among other things, a "declaratory
2   judgment regarding its right to federal trademark registration for the mark SUN
3   GEAR in connection with sun protection products" after the defendant began
4   promoting sun protection lotion under the same name in California.  No. C–93–
5   20931 RMW, 1994 WL 587237, at *3 (N.D. Cal. May 24, 1994).  In that case, the
6   court found that the defendant directed its product and trademark usage to the
7   California market because, like DBC, it "deliberately created the distribution
8   scheme whereby products bearing the mark [at issue] were sold in California" and
9   "permitted its mark [] to be used in California."  *Id.*  Thus, DBC's sales to
10  California customers, including their identities as well as the location of their
11  headquarters and state of incorporation, are relevant here.

12       Finally, any confidentiality concerns DBC raised have been addressed in the
13  stipulated Protective Order.  On May 23, 2019, TDF and DBC entered into a two-
14  tier protective order, allowing the designation of outside attorney's eyes-only
15  documents (Doc. No. 23.), which was signed by the Court after the Court made
16  some changes (Doc. No. 24.).  This Protective Order alleviates any objections
17  regarding confidential information and, in any case, the proprietary information of
18  primary concern to DBC, such as profit margin, pricing, or terms of sale (e.g., "net
19  thirty," etc.) is of no interest to TDF.  TDF already told to DBC during the meet
20  and confer process that it has no objection to the redaction of such information,
21  while still reserving the right to extrapolate total retail sales value of the units sold
22  in California to a gross dollar amount for the Court, and will not base that on
23  unknown wholesale pricing from DBC.

24       Thus, DBC should withdraw all objections and qualifiers to TDF's
25  jurisdictional discovery requests and, to the extent DBC objected to TDF's
26  discovery requests on confidentiality grounds, DBC should produce such relevant
27  documents in accordance with the Protective Order.
28  / / /

### b.   DBC's Contentions Regarding Request for Production Number 1

TDF's discovery request is overbroad and unduly burdensome because it is not limited in time, and thus seeks information that would no longer exist under reasonable record retention policies.  The request is not limited to sales of the products by DBC, and thus conceivably seeks information related to sales by other parties, of which DBC would have no record. The request is not narrowly tailored to the issues relevant to personal jurisdiction.

Additionally, TDF's arguments supporting its overbroad and irrelevant discovery requests are unpersuasive.  TDF has not shown why the names and shipping addresses of DBC's customers is relevant in any way to the personal jurisdiction determination, particularly when DBC has produced information regarding sales volume to customers that it stated under oath were California-based.  This is not a venue dispute, thus is shouldn't matter where in the State the customers are located, or where the products are shipped within the State.

TDF's contention that DBC's "California sales and contacts are relevant" to the issue of personal jurisdiction in this "trade dress case" fails for two reasons. First, TDF's views the scope of its claim too broadly, and ignores the declaratory posture of the action.   TDF asks the court to analyze the claim as if it were an claim brought by DBC against an infringer instead of what it truly is – which is an action brought by an alleged infringer seeking a declaration to the contrary.  TDF's declaratory judgment action arises from and is a result of its own alleged tortious conduct, not that of DBC, and DBC's only actions that are conceivably relevant to a personal jurisdiction determination on those claims are its efforts to police and enforce its trademark rights *vis a´ vis* TDF.  TDF's complaint does not allege any wrongdoing by DBC in California.  In order to satisfy its jurisdictional burden, TDF must demonstrate a <u>specific nexus</u> between DBC's enforcement of its mark and TDF's California-based suit.  Second, TDF's argument glazes over the fact

that DBC's mark is federally registered, thus the requisite "use in commerce" need not occur in California in order to maintain its rights and warrant nationwide trademark protection under federal law. DBC sells its products nationwide and around the world, which negates the relevance of any California sales.

The authority cited by TDF is distinguishable. *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502 (9th Cir. 2018) involved a dispute between two parties that were headquartered, located and operating in California, at least at the time the challenged conduct occurred. *Id.* at 506. Even though the defendant had moved its headquarters to Texas at the time of suit, the defendant was subject to general jurisdiction because its principal place of business had been California for several years leading up to the lawsuit. *Id.* Accordingly, there was no dispute as to where the actions were directed as the court noted that "every aspect of the case – from the parties to the underlying disputed rights – is completely centered in California". *Id.* There is no dispute in this case that DBC is a Mississippi corporation, headquartered in Mississippi, residing in Mississippi, and with no corporate presence in California. Thus, the *Delphix* holding is inapposite. In *Solar Gear Inc. v. Sunglass Hut Int'l Inc.*, No. C-93-20931 RMW, 1994 WL 587237 (N.D. Cal. May 24, 1994), the defendant – not the plaintiff – was the alleged infringer and it's allegedly tortious conduct took place in California, through a wholly owned California-based subsidiary. Importantly, *Solar Gear* did not involve an action for declaratory judgment of non-infringement, so court's analysis of personal jurisdiction was centered on infringement activity of the defendant instead of the plaintiff, as is the case here. *Id.* Likewise, *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002), did not involve an action for declaratory judgment of non-infringement, but instead focused on the acts individual defendants who engaged in wrongful conduct that targeted the plaintiff in California. TDF does not allege wrongful conduct by DBC in California, much less wrongful conducted that targeted TDF. Even if *Dole Food* was more

procedurally akin to the instant case, TDF still glosses over the substantial number of California contacts giving rise to specific jurisdiction in that case.

The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF, which are what gave rise to this action, and none of which took place in or were directed at California. The only other contacts that courts in this and other jurisdiction have found to bear on a jurisdictional inquiry in an action for a declaration of non-infringement are licensing activities within the forum state. In those instances, the courts have suggested licensing activity may support personal jurisdiction only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions. *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*, 2008 WL 7071464, at *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45 F.3d 1541. DBC's objections are valid and well founded, and should not be withdrawn. However, DBC did not rely on its objections in its response to Request for Production No.6, where it stated that there are no license agreements with California-based companies pertaining to the products at issue in this case.

Finally, even if TDF is correct that contacts, such as DBC's product sales, trade show participation, and corporate travel in California are relevant, DBC has provided that information. TDF's additional discovery requests extend beyond the facts it needs to establish specific jurisdiction and are merely harassing. Because "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," the Court should deny Plaintiff's motion to compel. *See Martinez*, 764 F.3d at 1070.

**2.     Request for Production No. 2**

REQUEST FOR PRODUCTION NO. 2:

ALL COMMUNICATIONS to or from any company in California regarding the PRODUCTS.

RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

DBC objects to this request because it is overly broad, unduly burdensome, vague, not limited in time/scope or proportional to the needs of the case, and seeks information that is irrelevant because it includes communications made to or from companies other than DBC, which has no bearing on the limited issue of personal jurisdiction. DBC further objects to this request because it seeks information which is not in the possession, custody and control of DBC, and to the extent it seeks information protected by the attorney-client privilege, work product doctrine or other privilege. DBC further objects to this request to the extent it seeks identification of DBC customers, pricing information, profit margins, or other similar proprietary and confidential business information, which is irrelevant to the issue of personal jurisdiction and otherwise subject to an appropriate protective order. DBC further objects this request because it seeks information that is subject to confidentiality restrictions.

**a.     TDF's Contentions Regarding Request for Production Number 2**

Communications with any California-based company are relevant to the extent they involve discussions relating to the sale of the product incorporating or embodying the trade dress that was the subject of DBC's demand letter.  Such communications are also relevant to the extent they involve discussions relating to terms of indemnification relating to the trade dress or any terms related to the implicit or express license of the trade dress.

DBC asserts that the identity of such contacts is irrelevant to the issue of personal jurisdiction and thus not discoverable.  However, the scope of relevance

that DBC is asserting is unreasonably narrow.  The nature, consistency, quality, and extent of DBC's California contacts, including the identities of those contacts and their shipping addresses, are directly relevant to the issue of personal jurisdiction, specifically the issues of whether it is fair to hail DBC into court here and the nexus between the products' trade dress, DBC's efforts to enforce that trade dress, and its demands to TDF.[3]

Directing such activities related to the trademark at California residents is relevant to the personal jurisdiction issue.  *See Delphix Corp. v. Embarcadero Techs., Inc.*, 749 Fed. Appx. 502, 506 (9th Cir. 2018) (finding that defendant's conduct was directed at plaintiff in California when the defendant challenged plaintiff's right to use its mark during settlement talks in California); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (concluding that the defendant's actions were "expressly aimed" at California because the defendant "knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers").  In *Solar Gear Inc. v. Sunglass Hut International Inc.*, the plaintiff sought, among other things, a "declaratory judgment regarding its right to federal trademark registration for the mark SUN GEAR in connection with sun protection products" after the defendant began promoting sun protection lotion under the same name in California.  No. C–93–20931 RMW, 1994 WL 587237, at *3 (N.D. Cal. May 24, 1994).  In that case, the court found that the defendant directed its product and trademark to the California market because, like DBC, it "deliberately created the distribution scheme whereby products bearing the mark [at issue] were sold in California" and "permitted its mark [] to be used in California."  *Id.*  Thus, DBC's sales to California customers, including their identities as well as the location of their headquarters and state of

---

[3] TDF has informed DBC in the meet and confer process that TDF consents to the redaction of the product pricing, profit margin, and sales term information (*e.g.*, discounts or "net" versus discounted terms).

JOINT STIPULATION REGARDING PLAINTIFF TABLE DE FRANCE, INC.'S MOTION TO COMPEL

1   incorporation, are relevant here.

2       As set forth above, at the conference of counsel, TDF proposed to resolve

3   issues related to this request by entering into the Court's exemplar protective order

4   and agreeing to allow redaction of price information or specific terms of sale (*i.e.*,

5   discounts, net thirty, etc.), but believes any volume requirements or contract terms

6   are relevant to the reasonableness of the court exercising jurisdiction under prong

7   three of the specific jurisdiction analysis, as well as potentially general jurisdiction.

8       Thus, DBC should withdraw all objections and qualifiers to TDF's

9   jurisdictional discovery requests and, to the extent DBC objected to TDF's

10  discovery requests on confidentiality grounds, DBC should produce such relevant

11  documents in accordance with the Protective Order.[4]

12          **b.    DBC's Contentions Regarding Request for**
13                  **Production No. 2**

14      TDF's discovery request is overbroad and unduly burdensome because it is

15  not limited in time, and thus seeks information that would no longer exist under

16  reasonable record retention policies.  The request is not limited to communications

17  involving DBC, and thus conceivably seeks information related to or involving

18  other parties, of which DBC would have no record. The request is not narrowly

19  tailored to the issues relevant to personal jurisdiction.

20      Additionally, TDF's arguments supporting its overbroad and irrelevant

21  discovery requests are unpersuasive.  TDF has not shown why the names and

22  shipping addresses of DBC's customers is relevant in any way to the personal

23  jurisdiction determination, particularly when DBC has produced information

24  regarding sales volume to customers that it stated under oath were California-

25  based.  This is not a venue dispute, thus is shouldn't matter where in the State the

26  customers are located, or where the products are shipped within the State.

27  ───────────────
[4]  This argument is substantially similar to the argument set forth in Section
28  III(A)(1)(a) above, and is set forth here for the Court's convenience and to ensure
    compliance with L.R. 37-2.1.

1     TDF's contention that DBC's "California sales and contacts are relevant" to
2   the issue of personal jurisdiction in this "trade dress case" fails for two reasons.
3   First, TDF's views the scope of its claim too broadly, and ignores the declaratory
4   posture of the action.    TDF asks the court to analyze the claim as if it were an
5   claim brought by DBC against an infringer instead of what it truly is – which is an
6   action brought by an alleged infringer seeking a declaration to the contrary.  TDF's
7   declaratory judgment action arises from and is a result of its own alleged tortious
8   conduct, not that of DBC, and DBC's only actions that are conceivably relevant to
9   a personal jurisdiction determination on those claims are its efforts to police and
10  enforce its trademark rights *vis a´ vis* TDF.  TDF's complaint does not allege any
11  wrongdoing by DBC in California.  In order to satisfy its jurisdictional burden,
12  TDF must demonstrate a <u>specific nexus</u> between DBC's enforcement of its mark
13  and TDF's California-based suit.  Second, TDF's argument glazes over the fact
14  that DBC's mark is federally registered, thus the requisite "use in commerce" need
15  not occur in California in order to maintain its rights and warrant nationwide
16  trademark protection under federal law.  DBC sells its products nationwide and
17  around the world, which negates the relevance of any California sales.

18     The authority cited by TDF is distinguishable.  *Delphix Corp. v.*
19  *Embarcadero Techs., Inc.*, 749 F. App'x 502 (9th Cir. 2018) involved a dispute
20  between two parties that were headquartered, located and operating in California,
21  at least at the time the challenged conduct occurred. *Id*. at 506.  Even though the
22  defendant had moved its headquarters to Texas at the time of suit, the defendant
23  was subject to general jurisdiction because its principal place of business had been
24  California for several years leading up to the lawsuit.  *Id*. Accordingly, there was
25  no dispute as to where the actions were directed as the court noted that "every
26  aspect of the case – from the parties to the underlying disputed rights – is
27  completely centered in California". *Id.*  There is no dispute in this case that DBC
28  is a Mississippi corporation, headquartered in Mississippi, residing in Mississippi,

and with no corporate presence in California.   Thus, the *Delphix* holding is inapposite.   In *Solar Gear Inc. v. Sunglass Hut Int'l Inc.*, No. C-93-20931 RMW, 1994 WL 587237 (N.D. Cal. May 24, 1994), the defendant – not the plaintiff – was the alleged infringer and its allegedly tortious conduct took place in California, through a wholly owned California-based subsidiary.   Importantly, *Solar Gear* did not involve an action for declaratory judgment of non-infringement, so court's analysis of personal jurisdiction was centered on infringement activity of the defendant instead of the plaintiff, as is the case here.   *Id.*   Likewise, *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002), did not involve an action for declaratory judgment of non-infringement, but instead focused on the acts individual defendants who engaged in wrongful conduct that targeted the plaintiff in California.   TDF does not allege wrongful conduct by DBC in California, much less wrongful conducted that targeted TDF.   Even if *Dole Food* was more procedurally akin to the instant case, TDF still glosses over the substantial number of California contacts giving rise to specific jurisdiction in that case.

The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF, which are what gave rise to this action, and none of which took place in or were directed at California.   The only other contacts that courts in this and other jurisdiction have found to bear on a jurisdictional inquiry in an action for a declaration of non-infringement are licensing activities within the forum state.   In those instances, the courts have suggested licensing activity may support personal jurisdiction only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions.   *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to

1   exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*,
2   2008 WL 7071464, at *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45
3   F.3d 1541.  DBC's objections are valid and well founded, and should not be
4   withdrawn.  However, DBC did not rely on its objections in its response to Request
5   for Production No.6, where it stated that there are no license agreements with
6   California-based companies pertaining to the products at issue in this case.

7        Finally, even if TDF is correct that contacts, such as DBC's product sales,
8   trade show participation, and corporate travel in California are relevant, DBC has
9   provided that information.  TDF's additional discovery requests extend beyond the
10  facts it needs to establish specific jurisdiction and are merely harassing.  Because
11  "further discovery would not demonstrate facts sufficient to constitute a basis for
12  jurisdiction," the Court should deny Plaintiff's motion to compel.  *See Martinez*,
13  764 F.3d at 1070.

14               **3.     Request for Production No. 4**
15  REQUEST FOR PRODUCTION NO. 4:

16       ALL contracts or agreements with any company or business that is
17  incorporated in or has offices in California, including but not limited to Smart &
18  Final, Stater Bros. Markets, BevMo!, Trader Joe's, DPI Specialty Foods West, DPI
19  Specialty Foods, United Natural Foods West, Inc., or United Natural Foods, Inc.
20  RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

21       DBC objects to this request because it is overly broad, unduly burdensome,
22  vague, not limited in time/scope or proportional to the needs of the case, and seeks
23  information that is irrelevant to the issue of personal jurisdiction because it is not
24  limited to contracts or agreements involving DBC, and because it seeks
25  information regarding entities that are merely located in California regardless of
26  whether the requested materials relate to any dealings within the State of
27  California. DBC further objects to this request to the extent it seeks identification
28  of DBC customers, pricing information, profit margins, or other similar proprietary

1   and confidential business information, which is irrelevant to the issue of personal

2   jurisdiction and otherwise subject to an appropriate protective order. DBC further

3   objects this request because it seeks information that is subject to confidentiality

4   restrictions.

5           **a.**    **TDF's Contentions Regarding Request for Production**

6                  **Number 4**

7       TDF is entitled to inquire and examine contracts and agreements showing

8   the nature of DBC's contractual obligations to California residents that have a

9   nexus with the trade dress.  DBC, however, asserts that the identity of its California

10   customers is irrelevant to the issue of personal jurisdiction and thus is not

11   discoverable.  The scope of relevance that DBC is asserting is unreasonably

12   narrow.  The nature, consistency, quality, and extent of DBC's California contacts,

13   including the identities of those contacts and whether those contacts are

14   incorporated in or have offices in California, are directly relevant to the issue of

15   personal jurisdiction, specifically the issues of whether it is fair to hail DBC into

16   court here and the nexus between the products' trade dress, DBC's efforts to

17   enforce that trade dress, and its demands to TDF.[5]

18       TDF believes, and intends to assert to this Court in its opposition to DBC's

19   motion to dismiss, that the systematic sale by DBC of its products to California

20   customers supports the proposition that it is fair to force DBC to litigate here.  The

21   quality, consistency, and specifics of those sales (absent price and terms) is

22   important to show the systematic nature of DBC's contacts.

23       In addition, those California contacts are relevant to the issue of the nexus

24   between the demand letter DBC sent TDF and the trade dress DBC is asserting

25   TDF infringes.  Because this is a trade dress case, the sale of products embodying

26   that trade dress is *necessary* for a trade dress owner, such as DBC, to maintain its

27   [5] TDF has informed DBC in the meet and confer process that TDF consents to the

28   redaction of the product pricing, profit margin, and sales term information (*e.g.*, discounts or "net" versus discounted terms).

1   rights in that trade dress.  *See* 15 U.S.C. § 1051 (trademark protection requires "use

2   in commerce"); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203

3   (9th Cir. 2012) ("[A] party pursuing a trademark claim must meet a threshold "use

4   in commerce" requirement.").

5          The fact that a trade dress owner must sell a product embodying the trade

6   dress to maintain its rights distinguishes this trademark case from cases like

7   *Juniper Networks, Inc. v. SSL Services, LLC*, No. C 08–5758 SBA, 2009 WL

8   3837266 (N.D. Cal. Nov. 16, 2009).  *Juniper* dealt with patent rights.  It is not

9   necessary to sell a product embodying a patent to enforce a patent.  3 McCarthy on

10  Trademarks and Unfair Competition § 16:11 ("Unlike patent law, rights in

11  trademarks are not gained through discovery or invention of the mark, but only

12  through actual usage.").  Thus, the sale of a product embodying a patent has no

13  nexus with a patent enforcement proceeding.  But in trade dress cases, there is a

14  direct nexus between use, ability to enforce, and the likelihood of confusion

15  analysis.

16         Furthermore, directing activities related to the trademark at California

17  residents is also relevant to the personal jurisdiction issue.  *See Delphix Corp. v.*

18  *Embarcadero Techs., Inc.*, 749 Fed. Appx. 502, 506 (9th Cir. 2018) (finding that

19  defendant's conduct was directed at plaintiff in California when the defendant

20  challenged plaintiff's right to use its mark during settlement talks in California);

21  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (concluding that

22  the defendant's actions were "expressly aimed" at California because the defendant

23  "knew that Dole's principal place of business was in California, knew that the

24  decisionmakers for Dole were located in California, and communicated directly

25  with those California decisionmakers").

26         In *Solar Gear Inc. v. Sunglass Hut International Inc.*, the plaintiff sought,

27  among other things, a "declaratory judgment regarding its right to federal

28  trademark registration for the mark SUN GEAR in connection with sun protection

products" after the defendant began promoting sun protection lotion under the same name in California.  No. C–93–20931 RMW, 1994 WL 587237, at *3 (N.D. Cal. May 24, 1994).  In that case, the court found that the defendant directed its product and trademark to the California market because, like DBC, it "deliberately created the distribution scheme whereby products bearing the mark [at issue] were sold in California" and "permitted its mark [] to be used in California."  *Id.*  Thus, DBC's sales to California customers, including their identities as well as the location of their headquarters and state of incorporation, are relevant here.

As set forth above, at the conference of counsel, TDF proposed to resolve issues related to this request by entering into the Court's exemplar protective order and agreeing to allow redaction of price information or specific terms of sale (*i.e.*, discounts, net thirty, etc.), but believes any volume requirements or contract terms are relevant to the reasonableness of the court exercising jurisdiction under prong three of the specific jurisdiction analysis, as well as potentially general jurisdiction.

As set forth above, TDF does not object to the redaction of price information or specific terms of sale (*i.e.*, discounts, net thirty, etc.), but believes any volume requirements or contract terms are relevant to the reasonableness of the court exercising jurisdiction under prong three of the specific jurisdiction analysis, as well as potentially general jurisdiction.

Thus, DBC should withdraw all objections and qualifiers to TDF's jurisdictional discovery requests and, to the extent DBC objected to TDF's discovery requests on confidentiality grounds, DBC should produce such relevant documents in accordance with the Protective Order.

### b.    DBC's Contentions Regarding Request for Production Number 4

TDF's discovery request is overbroad and unduly burdensome because it is not limited to the trademark or products at issue and is not limited to matters involving actual contacts or business dealings within the State of California or

limited even to the subject matter of this dispute, generally.   The request is not limited in time, and thus seeks information that would no longer exist under reasonable record retention policies.  The request is not narrowly tailored to the issues relevant to personal jurisdiction.

Additionally, TDF's arguments supporting its overbroad and irrelevant discovery requests are unpersuasive.  TDF has not shown why the names and shipping addresses of DBC's customers is relevant in any way to the personal jurisdiction determination, particularly when DBC has produced information regarding sales volume to customers that it stated under oath were California-based.  This is not a venue dispute, thus is shouldn't matter where in the State the customers are located, or where the products are shipped within the State.

TDF's contention that DBC's "California sales and contacts are relevant" to the issue of personal jurisdiction in this "trade dress case" fails for two reasons. First, TDF's views the scope of its claim too broadly, and ignores the declaratory posture of the action.   TDF asks the court to analyze the claim as if it were an claim brought by DBC against an infringer instead of what it truly is – which is an action brought by an alleged infringer seeking a declaration to the contrary.  TDF's declaratory judgment action arises from and is a result of its own alleged tortious conduct, not that of DBC, and DBC's only actions that are conceivably relevant to a personal jurisdiction determination on those claims are its efforts to police and enforce its trademark rights *vis a´ vis* TDF.  TDF's complaint does not allege any wrongdoing by DBC in California.  In order to satisfy its jurisdictional burden, TDF must demonstrate a <u>specific nexus</u> between DBC's enforcement of its mark and TDF's California-based suit.  Second, TDF's argument glazes over the fact that DBC's mark is federally registered, thus the requisite "use in commerce" need not occur in California in order to maintain its rights and warrant nationwide trademark protection under federal law.  DBC sells its products nationwide and around the world, which negates the relevance of any California sales.

The authority cited by TDF is distinguishable. *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502 (9th Cir. 2018) involved a dispute between two parties that were headquartered, located and operating in California, at least at the time the challenged conduct occurred. *Id.* at 506. Even though the defendant had moved its headquarters to Texas at the time of suit, the defendant was subject to general jurisdiction because its principal place of business had been California for several years leading up to the lawsuit. *Id.* Accordingly, there was no dispute as to where the actions were directed as the court noted that "every aspect of the case – from the parties to the underlying disputed rights – is completely centered in California". *Id.* There is no dispute in this case that DBC is a Mississippi corporation, headquartered in Mississippi, residing in Mississippi, and with no corporate presence in California. Thus, the *Delphix* holding is inapposite. In *Solar Gear Inc. v. Sunglass Hut Int'l Inc.*, No. C-93-20931 RMW, 1994 WL 587237 (N.D. Cal. May 24, 1994), the defendant – not the plaintiff – was the alleged infringer and its allegedly tortious conduct took place in California, through a wholly owned California-based subsidiary. Importantly, *Solar Gear* did not involve an action for declaratory judgment of non-infringement, so court's analysis of personal jurisdiction was centered on infringement activity of the defendant instead of the plaintiff, as is the case here. *Id.* Likewise, *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002), did not involve an action for declaratory judgment of non-infringement, but instead focused on the acts individual defendants who engaged in wrongful conduct that targeted the plaintiff in California. TDF does not allege wrongful conduct by DBC in California, much less wrongful conducted that targeted TDF. Even if *Dole Food* was more procedurally akin to the instant case, TDF still glosses over the substantial number of California contacts giving rise to specific jurisdiction in that case.

The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF,

which are what gave rise to this action, and none of which took place in or were directed at California.   The only other contacts that courts in this and other jurisdiction have found to bear on a jurisdictional inquiry in an action for a declaration of non-infringement are licensing activities within the forum state.   In those instances, the courts have suggested licensing activity may support personal jurisdiction only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions.   *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*, 2008 WL 7071464, at *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45 F.3d 1541.   DBC's objections are valid and well founded, and should not be withdrawn.   However, DBC did not rely on its objections in its response to Request for Production No.6, where it stated that there are no license agreements with California-based companies pertaining to the products at issue in this case.

Finally, even if TDF is correct that contacts, such as DBC's product sales, trade show participation, and corporate travel in California are relevant, DBC has provided that information.   TDF's additional discovery requests extend beyond the facts it needs to establish specific jurisdiction and are merely harassing.   Because "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," the Court should deny Plaintiff's motion to compel.   *See Martinez*, 764 F.3d at 1070.

### 4.     Request for Production No. 5.

REQUEST FOR PRODUCTION NO. 5:

Any agreement related to the REGISTRATION.

/ / /

1  RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

2    DBC objects to this request because it is overly broad, unduly burdensome,

3  vague, not limited in time/scope or proportional to the needs of the case, and seeks

4  information that is irrelevant to the issue of personal jurisdiction because it is not

5  limited to agreements to which DBC is a party, is not limited to agreements aimed

6  at California, and seeks information related to a federal trademark registration with

7  the USPTO in Virginia. DBC further objects to this request because it seeks

8  discovery of materials that are subject to confidentiality restrictions and/or other

9  limitations on disclosure.

10     **a.**  **TDF's Contentions Regarding Request for Production**

11        **Number 5**

12    TDF is willing to restrict this request to any agreements related to the

13  REGISTRATION with any company having a notice address or headquarters in

14  California or that is incorporated in California, subject to the facts being verified

15  by outside counsel, and regardless whether there is any subjective belief by DBC

16  that such an agreement was "aimed at California." TDF believes the phrase

17  "aimed at California" is improperly restrictive and should not prevent the

18  disclosure of the identities of any party to such an agreement that is located in

19  California.

20    TDF is entitled to inquire and examine as to the nature of DBC's contractual

21  obligations to California residents that have a nexus with the trade dress. An

22  agreement related to the trade dress registration itself is clearly has a direct nexus

23  with the trade dress.

24    As set forth above, TDF does not object to the redaction of price information

25  or specific terms of sale (*i.e.*, discounts, net thirty, etc.), but believes any volume

26  requirements or contract terms are relevant to the reasonableness of the court

27  exercising jurisdiction under prong three of the specific jurisdiction analysis, as

28  well as potentially general jurisdiction. Thus, DBC should withdraw all objections

and qualifiers to TDF's jurisdictional discovery requests and, to the extent DBC objected to TDF's discovery requests on confidentiality grounds, DBC should produce such relevant documents in accordance with the Protective Order.

### b.   DBC's Contentions Regarding Request for Production Number 5

TDF's discovery request is overbroad and unduly burdensome because it is not limited to matters involving actual contacts or business dealings within the State of California or limited even to the subject matter of this dispute, generally. The request is not limited in time, and thus seeks information that would no longer exist under reasonable record retention policies.  It is also not possible for DBC to discern what is meant by agreements that "relate" to the registration.  To the extent the request is aimed at obtaining contracts between DBC and its customers, the request is duplicative.  The request is not narrowly tailored to the issues relevant to personal jurisdiction.

Additionally, TDF's request seeks information that is irrelevant to the limited issue of personal jurisdiction in this particular case.  The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF, which are what gave rise to this action, and none of which took place in or were directed at California.  The only other contacts that courts in this and other jurisdiction have found to bear on a jurisdictional inquiry in an action for a declaration of non-infringement are licensing activities within the forum state.  In those instances, the courts have suggested licensing activity may support personal jurisdiction only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions.  *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate

1  infringement cases or granting the licensor the right to exercise control over the

2  licensee's sales or marketing activities.'"); *Autogenomics*, 2008 WL 7071464, at

3  *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45 F.3d 1541.  As DBC

4  stated in its response to Request for Production No.6, there are no license

5  agreements with California-based companies pertaining to the products at issue in

6  this case.

7       DBC has already provided its product sales, trade show participation, and

8  corporate travel in California.  If those contacts are found to be relevant, then

9  TDF's additional discovery requests extend beyond the facts it needs to establish

10  specific jurisdiction and are merely harassing.  Because "further discovery would

11  not demonstrate facts sufficient to constitute a basis for jurisdiction," the Court

12  should deny Plaintiff's motion to compel.  *See Martinez*, 764 F.3d at 1070.

13            **5.     Request for Production No. 6.**

14  REQUEST FOR PRODUCTION NO. 6:

15       Any license related to the PRODUCTS.

16  RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

17       DBC objects to this request because it is overly broad, unduly burdensome,

18  vague, not limited in time/scope or proportional to the needs of the case, and seeks

19  information that is irrelevant to the issue of personal jurisdiction because it is not

20  limited to licenses aimed at California. Subject to its objections, DBC states that it

21  has limited its inquiry to licenses specific to California, and there are none.

22            **a.     TDF's Contentions Regarding Request for Production**
23                    **Number 6**

24       TDF believes the phrase "aimed at California" is improperly restrictive.

25  TDF is willing to restrict this request to any license agreements related to DBC's

26  products embodying its trade dress to any company having a notice address or

27  headquarters in California or that is incorporated in California, subject to the facts

28  being verified by outside counsel, and regardless whether there is any subjective

1   belief by DBC that such an agreement was "aimed at California."   This would

2   include any terms of license on invoice or purchase order backers.

3          Terms related to the implicit or express license of the trade dress to

4   customers located in California are directly relevant to the issue of personal

5   jurisdiction.  TDF does not seek pricing, profit margin, or sales term information

6   (*e.g.*, discounts or "net" versus discounted terms) and does not object to such

7   information being redacted.

8          As set forth above, TDF does not object to the redaction of price information

9   or specific terms of sale (*i.e.*, discounts, net thirty, etc.), but believes any volume

10  requirements or contract terms are relevant to the reasonableness of the court

11  exercising jurisdiction under prong three of the specific jurisdiction analysis, as

12  well as potentially general jurisdiction.  Thus, DBC should withdraw all objections

13  and qualifiers to TDF's jurisdictional discovery requests and, to the extent DBC

14  objected to TDF's discovery requests on confidentiality grounds, DBC should

15  produce such relevant documents in accordance with the Protective Order.

16         **b.     DBC's Contentions Regarding Request for**
                    **Production Number 6**
17

18         TDF's discovery request is overbroad and unduly burdensome because it is

19  not limited to matters involving actual contacts or business dealings within the

20  State of California or limited even to the subject matter of this dispute, generally.

21  The request is not limited in time, and thus seeks information that would no longer

22  exist under reasonable record retention policies.  It is also not possible for DBC to

23  discern what is meant by licenses "related" to the registration.  The request is not

24  narrowly tailored to the issues relevant to personal jurisdiction.

25         The contacts that are relevant to a jurisdictional determination here are those

26  related to DBC's efforts to police and enforce is trademark rights against TDF,

27  which are what gave rise to this action, and none of which took place in or were

28  directed at California.  On occasion, courts in this and other jurisdiction have found

licensing activities within the forum state to bear on a jurisdictional inquiry in an action for a declaration of non-infringement, but only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions. *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*, 2008 WL 7071464, at *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45 F.3d 1541.  DBC's objections are valid and well founded, and should not be withdrawn.  However, DBC did not rely on its objections in its response to Request for Production No.6, where it stated that there are no license agreements with California-based companies pertaining to the products at issue in this case.

DBC has already provided its product sales, trade show participation, and corporate travel in California.  If those contacts are found to be relevant, then TDF's additional discovery requests extend beyond the facts it needs to establish specific jurisdiction and are merely harassing.  Because "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," the Court should deny Plaintiff's motion to compel.  *See Martinez*, 764 F.3d at 1070.

### 6. Request for Production No. 7

REQUEST FOR PRODUCTION NO. 7:

Any agreement referring to indemnity or indemnification that relates to the PRODUCTS.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

DBC objects to this request because it is overly broad, unduly burdensome, vague, not limited in time/scope or proportional to the needs of the case, and seeks information that is irrelevant to the issue of personal jurisdiction because

indemnification - whether or not limited to California - has no bearing on the narrow issue of personal jurisdiction.

### a.   TDF's Contentions Regarding Request for Production Number 7

TDF is willing to restrict this request to any indemnification agreements related to the product embodying DBC's trade dress with any company having a notice address or headquarters in California or that is incorporated in California, subject to the facts being verified by outside counsel, and regardless whether there is any subjective belief by DBC that such an agreement was "aimed at California." DBC's contention that any such agreement or contractual obligation must be "aimed at" California is improperly restrictive and should not prevent the disclosure of the identities of any customer or party to such an agreement that has its headquarters or is incorporated in California.

TDF is entitled to review any terms of indemnification, including any terms of indemnification on invoice or purchase order backers, to determine whether such terms reference the asserted trademark or intellectual property.  Terms of indemnification relating to the trade dress are directly relevant to the issue of personal jurisdiction because they establish a nexus between the asserted trade dress and California.

As set forth above, TDF does not object to the redaction of price information or specific terms of sale (*i.e.*, discounts, net thirty, etc.), but believes any volume requirements or contract terms are relevant to the reasonableness of the court exercising jurisdiction under prong three of the specific jurisdiction analysis, as well as potentially general jurisdiction.  Thus, DBC should withdraw all objections and qualifiers to TDF's jurisdictional discovery requests and, to the extent DBC objected to TDF's discovery requests on confidentiality grounds, DBC should produce such relevant documents in accordance with the Protective Order.

/ / /

### b.   DBC's Contentions Regarding Request for Production Number 7

TDF's discovery request is overbroad and unduly burdensome because it is not limited to matters involving actual contacts or business dealings within the State of California or limited even to the subject matter of this dispute, generally. The request is not limited in time, and thus seeks information that would no longer exist under reasonable record retention policies.  It is also not possible for DBC to discern what is meant by agreements "referring" to indemnity or that "relates" to the registration.   The request is not narrowly tailored to the issues relevant to personal jurisdiction.

The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF, which are what gave rise to this action, and none of which took place in or were directed at California.  On occasion, courts in this and other jurisdiction have found licensing activities within the forum state to bear on a jurisdictional inquiry in an action for a declaration of non-infringement, but only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions.  *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*, 2008 WL 7071464, at *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45 F.3d 1541.  DBC's objections are valid and well founded, and should not be withdrawn.  However, DBC did not rely on its objections in its response to Request for Production No. 6, where it stated that there are no license agreements with California-based companies pertaining to the products at issue in this case.

DBC has already provided its product sales, trade show participation, and corporate travel in California.  If those contacts are found to be relevant, then TDF's additional discovery requests extend beyond the facts it needs to establish specific jurisdiction and are merely harassing.  Because "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," the Court should deny Plaintiff's motion to compel.  *See Martinez*, 764 F.3d at 1070.

### 7. Request for Production No. 8

REQUEST FOR PRODUCTION NO. 8:

Any DOCUMENTS related to exhibition at, attendance of, or participation in any trade show in California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

DBC objects to this request because it is overly broad, unduly burdensome, vague, not limited in time/scope or proportional to the needs of the case, and seeks information that is irrelevant to the issue of personal jurisdiction. DBC further objects to this request to the extent it seeks identification of DBC customers, pricing information, profit margins, or other similar proprietary and confidential business information, which is irrelevant to the issue of personal jurisdiction and otherwise subject to an appropriate protective order.

Subject to and without waiving its objections, DBC has limited its search to documents related to exhibition at, attendance of, or participation in any trade show in California from the year 2014 - present, and while it is not possible for DBC to identify every responsive document in the time allotted to respond to these requests, those it has identified are being produced herewith as DBC 000296-000299. See all DBC 000293-000294, which are being produced herewith.

### a. TDF's Contentions Regarding Request for Production Number 8

Although DBC produced a trade show listing, it refused to fully respond to this request.  DBC provided travel lists for three representatives and/or employees

1   generally listing the month and year of the business trip to California and a very

2   general explanation as to the purpose of the visit, *e.g.*, "customer visit." TDF,

3   however, is entitled to review the contractual terms regarding the displays or

4   booths at such trade shows to determine whether they contain terms related to the

5   asserted trade dress or intellectual property.

6       As set forth above, at the conference of counsel, TDF proposed to resolve

7   issues related to this request by entering into the Court's exemplar protective order

8   and agreeing to allow redaction of price information or specific terms of sale (*i.e.*,

9   discounts, net thirty, etc.). A Stipulated Protective Order has since been entered

10  with the Court and should alleviate any objections regarding confidential

11  information. Thus, DBC should withdraw all objections and qualifiers to TDF's

12  jurisdictional discovery requests and, to the extent DBC objected to TDF's

13  discovery requests on confidentiality grounds, DBC should produce such relevant

14  documents in accordance with the Protective Order.

15              **b.    DBC's Contentions Regarding Request for**

16                       **Production Number 8**

17      TDF's discovery request is overbroad and unduly burdensome because it is

18  not limited to the subject matter of this dispute, generally.  The request is not

19  limited in time, and thus seeks information that would no longer exist under

20  reasonable record retention policies.  It is also not possible for DBC to discern

21  what is meant by documents "related" to trade show attendance. The request is not

22  narrowly tailored to the issues relevant to personal jurisdiction.

23      The contacts that are relevant to a jurisdictional determination here are those

24  related to DBC's efforts to police and enforce is trademark rights against TDF,

25  which are what gave rise to this action, and none of which took place in or were

26  directed at California.  On occasion, courts in this and other jurisdiction have found

27  licensing activities within the forum state to bear on a jurisdictional inquiry in an

28  action for a declaration of non-infringement, but only where the licensing

1  agreements obligate or give the licensee defendant the right to pursue the
2  enforcement actions.  *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n
3  determining whether specific personal jurisdiction exists in this context, 'our case
4  law requires that the license agreement contemplate a relationship beyond royalty
5  or cross-licensing payment, such as granting both parties the right to litigate
6  infringement cases or granting the licensor the right to exercise control over the
7  licensee's sales or marketing activities.'"); *Autogenomics*, 2008 WL 7071464, at
8  *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45 F.3d 1541.  DBC's
9  objections are valid and well founded, and should not be withdrawn.  However,
10  DBC did not rely on its objections in its response to Request for Production No. 6,
11  where it stated that there are no license agreements with California-based
12  companies pertaining to the products at issue in this case.

13  DBC has already provided its product sales, trade show participation, and
14  corporate travel in California, which DBC believes in good faith includes all
15  information and documents related to trade show attendance and/or participation in
16  DBC's possession, and of which it is aware.  If those contacts are found to be
17  relevant, then TDF's additional discovery requests extend beyond the facts it needs
18  to establish specific jurisdiction and are merely harassing.  Because "further
19  discovery would not demonstrate facts sufficient to constitute a basis for
20  jurisdiction," the Court should deny Plaintiff's motion to compel.  *See Martinez*,
21  764 F.3d at 1070.

22  **8.  Request for Production No. 10 [sic 9]**
23  REQUEST FOR PRODUCTION NO. 10 [SIC: 9]:
24  Any DOCUMENTS related to any travel of any of YOUR employees, board
25  members, executives, or contractors to California related to YOUR business.
26  RESPONSE TO REQUEST FOR PRODUCTION NO. 10 [SIC: 9]:
27  DBC objects to this request because it is overly broad, unduly burdensome,
28  vague, not limited in time/scope or proportional to the needs of the case, and seeks

information that is irrelevant to the issue of personal jurisdiction, such as travel expenses. DBC further objects to this request to the extent it seeks identification of DBC customers, pricing information, profit margins, or other similar proprietary and confidential business information, which is irrelevant to the issue of personal jurisdiction and otherwise subject to an appropriate protective order Subject to and without waiving its objections, DBC has limited its search to travel by DBC to California in connection with the PRODUCTS, and the instances of travel discovered within the time allotted to respond to these requests are reflected in DBC 000293-000295 being produced herewith.

### a.   TDF's Contentions Regarding Request for Production Number 10 [SIC: 9]

TDF does not understand how this interrogatory is "overly broad, unduly burdensome, vague and ambiguous, not limited in time or proportional to the needs of the case." TDF is entitled to the identity of customers met with, and their locations in California to the extent the customer meeting involved or related to the product embodying DBC's trade dress. By entering the State of California for business purposes, especially as relating to its product embodying the trade dress is seeks to enforce against TDF, such documents will show DBC directing activities at California. Such directed activities related to the trademark at California is relevant to the personal jurisdiction issue. *See Delphix Corp. v. Embarcadero Techs., Inc.*, 749 Fed. Appx. 502, 506 (9th Cir. 2018) (finding that defendant's conduct was directed at plaintiff in California when the defendant challenged plaintiff's right to use its mark during settlement talks in California); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (concluding that the defendant's actions were "expressly aimed" at California because the defendant "knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers").

In *Solar Gear Inc. v. Sunglass Hut International Inc.*, the plaintiff sought, among other things, a "declaratory judgment regarding its right to federal trademark registration for the mark SUN GEAR in connection with sun protection products" after the defendant began promoting sun protection lotion under the same name in California.  No. C–93–20931 RMW, 1994 WL 587237, at *3 (N.D. Cal. May 24, 1994).  In that case, the court found that the defendant directed its product and trademark to the California market because, like DBC, it "deliberately created the distribution scheme whereby products bearing the mark [at issue] were sold in California" and "permitted its mark [] to be used in California."  *Id.*  Thus, DBC's sales to California customers, including their identities as well as the location of their headquarters and state of incorporation, are relevant here.

Furthermore, in its document production, DBC provided evidence that one of its representatives traveled to California to purchase machinery.  DBC should further provide more specifics as to the purchase and whether that machinery was used to manufacture the products embodying its trade dress.

As set forth above, at the conference of counsel, TDF proposed to resolve issues related to confidentiality issues.  To the extent this response implies the disclosure of confidential information, such as pricing information or specific terms of sale, the Stipulated Protective Order entered with the Court should resolve any such issues.

Thus, DBC should withdraw all objections and qualifiers to TDF's jurisdictional discovery requests and, to the extent DBC objected to TDF's discovery requests on confidentiality grounds, DBC should produce such relevant documents in accordance with the Protective Order.

### b.    DBC's Contentions Regarding Request for Production Number 10 [SIC: 9]

TDF's discovery request is overbroad and unduly burdensome because it is not limited in time, and thus seeks information that may no longer exist under

reasonable record retention policies.  The request is not limited to travel related to the products at issue, and therefore is overbroad. The request is vague and ambiguous for several reasons, but primarily because the defined term YOUR includes a host of entities and individuals, including DBC's attorneys.  As a result, the request conceivable includes information related to the travel of DBC's attorneys (or past employees, etc.) related solely to the business of the attorneys (or current business of past employees, etc.), and not the business of DBC.  The request is not narrowly tailored to the issues relevant to personal jurisdiction.

TDF's contention that DBC's travel to California is relevant to the issue of personal jurisdiction in this "trade dress case" fails for two reasons.  First, TDF's views the scope of its claim too broadly, and ignores the declaratory posture of the action.   TDF asks the court to analyze the claim as if it were an claim brought by DBC against an infringer instead of what it truly is – which is an action brought by an alleged infringer seeking a declaration to the contrary.   TDF's declaratory judgment action arises from and is a result of its own alleged tortious conduct, not that of DBC, and DBC's only actions that are conceivably relevant to a personal jurisdiction determination on those claims are its efforts to police and enforce its trademark rights *vis a´ vis* TDF.  TDF's complaint does not allege any wrongdoing by DBC in California.   In order to satisfy its jurisdictional burden, TDF must demonstrate a <u>specific nexus</u> between DBC's enforcement of its mark and TDF's California-based suit.  Second, TDF's argument glazes over the fact that DBC's mark is federally registered, thus the requisite "use in commerce" need not occur in California in order to maintain its rights and warrant nationwide trademark protection under federal law.  DBC sells its products nationwide and around the world, which negates the relevance of any California sales or instances of travel to California related to DBC's business.

The authority cited by TDF is distinguishable.  *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502 (9th Cir. 2018) involved a dispute

between two parties that were headquartered, located and operating in California, at least at the time the challenged conduct occurred. *Id*. at 506.  Even though the defendant had moved its headquarters to Texas at the time of suit, the defendant was subject to general jurisdiction because its principal place of business had been California for several years leading up to the lawsuit.  *Id*. Accordingly, there was no dispute as to where the actions were directed as the court noted that "every aspect of the case – from the parties to the underlying disputed rights – is completely centered in California".  *Id*.  There is no dispute in this case that DBC is a Mississippi corporation, headquartered in Mississippi, residing in Mississippi, and with no corporate presence in California.   Thus, the *Delphix* holding is inapposite.  In *Solar Gear Inc. v. Sunglass Hut Int'l Inc.*, No. C-93-20931 RMW, 1994 WL 587237 (N.D. Cal. May 24, 1994), the defendant – not the plaintiff – was the alleged infringer and its allegedly tortious conduct took place in California, through a wholly owned California-based subsidiary.  Importantly, *Solar Gear* did not involve an action for declaratory judgment of non-infringement, so court's analysis of personal jurisdiction was centered on infringement activity of the defendant instead of the plaintiff, as is the case here.  *Id*.  Likewise, *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002), did not involve an action for declaratory judgment of non-infringement, but instead focused on the acts individual defendants who engaged in wrongful conduct that targeted the plaintiff in California.  TDF does not allege wrongful conduct by DBC in California, much less wrongful conducted that targeted TDF.  Even if *Dole Food* was more procedurally akin to the instant case, TDF still glosses over the substantial number of California contacts giving rise to specific jurisdiction in that case.

The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF, which are what gave rise to this action, and none of which took place in or were directed at California.  The only other contacts that courts in this and other

jurisdiction have found to bear on a jurisdictional inquiry in an action for a declaration of non-infringement are licensing activities within the forum state.  In those instances, the courts have suggested licensing activity may support personal jurisdiction only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions.  *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*, 2008 WL 7071464, at *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45 F.3d 1541.  As DBC stated in its response to Request for Production No.6, there are no license agreements with California-based companies pertaining to the products at issue in this case.

Finally, even if TDF is correct that contacts, such as DBC's product sales, trade show participation, and corporate travel in California are relevant, DBC has provided that information, to the extent it is known by and available to DBC.  DBC has, in good faith, fully responded to this request.  Any information related to the purchase of equipment in California falls outside the scope of TDF's discovery requests.  TDF's additional discovery requests extend beyond the facts it needs to establish specific jurisdiction and are merely harassing.  Because "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," the Court should deny Plaintiff's motion to compel.  *See Martinez*, 764 F.3d at 1070.

## B.  Responses to Interrogatories

### 1.  Interrogatory No. 2

INTERROGATORY NO. 2:

Identify all agreements relating to the PRODUCTS that YOU have entered

1   into with a business or company incorporated in, or which has locations in,

2   California, including but not limited to agreements to promote, sell or distribute the

3   products, licenses, indemnity agreements, hold harmless agreements, or settlement

4   agreements.

5   RESPONSE TO INTERROGATORY NO. 2:

6        DBC objects to this interrogatory because it is overly broad, unduly

7   burdensome, vague, not limited in time or proportional to the needs of the case, and

8   seeks information that is irrelevant to the issue of personal jurisdiction. Plaintiff's

9   request seeks information from entities that are simply located in California

10  regardless as to whether or not the contracts are directed at California or related to

11  any transactions within the State of California. DBC further objects to this

12  interrogatory to the extent it seeks information protected by the work product

13  doctrine and/or attorney-client privilege and to the extent it seeks identification of

14  DBC customers, pricing information, profit margins, or other similar proprietary

15  and confidential business information, which is irrelevant to the issue of personal

16  jurisdiction and otherwise subject to an appropriate protective order. DBC further

17  objects this interrogatory because it seeks information that is subject to

18  confidentiality restrictions.

19       **a.    TDF's Contentions Regarding Interrogatory No. 2.**

20       TDF does not understand how this interrogatory is "overly broad, unduly

21  burdensome, vague and ambiguous, not limited in time or proportional to the needs

22  of the case." Such agreements are relevant to the extent they involve discussion of

23  sale of the product incorporating or embodying the trade dress that was the subject

24  of DBC's demand letter. Terms of indemnification relating to the trade dress are

25  also directly relevant, as are any terms related to the implicit or express license of

26  the trade dress to customers. TDF does not seek pricing, profit margin, or sales

27  term information (*e.g.*, discounts or "net" versus discounted terms) and does not

28  object to such information being redacted.

TDF agrees that if DBC produces the agreements in question, this Interrogatory is satisfied by merely pointing to those agreements.  The identity of the California business or company party to the agreement with DBC is relevant to the issue of personal jurisdiction, specifically as to the issues of whether it is fair to hail DBC into court here and the nexus between the products' trade dress, DBC's efforts to enforce that trade dress, and its demands to TDF.  *See Delphix Corp. v. Embarcadero Techs., Inc.*, 749 Fed. Appx. 502, 506 (9th Cir. 2018) (finding that defendant's conduct was directed at plaintiff in California when the defendant challenged plaintiff's right to use its mark during settlement talks in California); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (concluding that the defendant's actions were "expressly aimed" at California because the defendant "knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers").

In *Solar Gear Inc. v. Sunglass Hut International Inc.*, the plaintiff sought, among other things, a "declaratory judgment regarding its right to federal trademark registration for the mark SUN GEAR in connection with sun protection products" after the defendant began promoting sun protection lotion under the same name in California.  No. C–93–20931 RMW, 1994 WL 587237, at *3 (N.D. Cal. May 24, 1994).  In that case, the court found that the defendant directed its product and trademark to the California market because, like DBC, it "deliberately created the distribution scheme whereby products bearing the mark [at issue] were sold in California" and "permitted its mark [] to be used in California."  *Id.*  Thus, DBC's sales to California customers, including their identities as well as the location of their headquarters and state of incorporation, are relevant here.

As set forth above, at the conference of counsel, TDF proposed to resolve issues related to this request by entering into the Court's exemplar protective order and agreeing to allow redaction of price information or specific terms of sale (*i.e.*,

discounts, net thirty, etc.).  Thus, DBC should withdraw all objections and qualifiers to TDF's jurisdictional discovery requests and, to the extent DBC objected to TDF's discovery requests on confidentiality grounds, DBC should produce such relevant documents in accordance with the Protective Order.

### b.    DBC's Contentions Regarding Interrogatory No. 2.

TDF's discovery request is overbroad and unduly burdensome because it is not limited to the trademark or products at issue and is not limited to matters involving actual contacts or business dealings within the State of California or limited even to the subject matter of this dispute, generally.   The request is not limited in time, and thus seeks information that would no longer exist under reasonable record retention policies.  The request is not narrowly tailored to the issues relevant to personal jurisdiction.

Additionally, TDF's arguments supporting its overbroad and irrelevant discovery requests are unpersuasive.  TDF has not shown why "agreements" in general are relevant in any way to the personal jurisdiction determination in this particular, particularly when DBC has produced information regarding sales volume to customers that it stated under oath were California-based.

TDF's contention that DBC's agreements are relevant to the issue of personal jurisdiction "to the extent they involve discussion of sale of the product incorporating or embodying the trade dress" fails for two reasons.  First, TDF's views the scope of its claim too broadly, and ignores the declaratory posture of the action.   TDF asks the court to analyze the claim as if it were an claim brought by DBC against an infringer instead of what it truly is – which is an action brought by an alleged infringer seeking a declaration to the contrary.   TDF's declaratory judgment action arises from and is a result of its own alleged tortious conduct, not that of DBC, and DBC's only actions that are conceivably relevant to a personal jurisdiction determination on those claims are its efforts to police and enforce its trademark rights *vis a´ vis* TDF.  TDF's complaint does not allege any wrongdoing

by DBC in California.  In order to satisfy its jurisdictional burden, TDF must demonstrate a <u>specific nexus</u> between DBC's enforcement of its mark and TDF's California-based suit.  Second, TDF's argument glazes over the fact that DBC's mark is federally registered, thus the requisite "use in commerce" need not occur in California in order to maintain its rights and warrant nationwide trademark protection under federal law.  DBC sells its products nationwide and around the world, which negates the relevance of any California sales or agreements discussing sales.

The authority cited by TDF is distinguishable.  *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502 (9th Cir. 2018) involved a dispute between two parties that were headquartered, located and operating in California, at least at the time the challenged conduct occurred.  *Id*. at 506.  Even though the defendant had moved its headquarters to Texas at the time of suit, the defendant was subject to general jurisdiction because its principal place of business had been California for several years leading up to the lawsuit.  *Id*. Accordingly, there was no dispute as to where the actions were directed as the court noted that "every aspect of the case – from the parties to the underlying disputed rights – is completely centered in California".  *Id.*  There is no dispute in this case that DBC is a Mississippi corporation, headquartered in Mississippi, residing in Mississippi, and with no corporate presence in California.  Thus, the *Delphix* holding is inapposite.  In *Solar Gear Inc. v. Sunglass Hut Int'l Inc.*, No. C-93-20931 RMW, 1994 WL 587237 (N.D. Cal. May 24, 1994), the defendant – not the plaintiff – was the alleged infringer and its allegedly tortious conduct took place in California, through a wholly owned California-based subsidiary.  Importantly, *Solar Gear* did not involve an action for declaratory judgment of non-infringement, so court's analysis of personal jurisdiction was centered on infringement activity of the defendant instead of the plaintiff, as is the case here.  *Id.*  Likewise, *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002), did not involve an action for declaratory

judgment of non-infringement, but instead focused on the acts individual defendants who engaged in wrongful conduct that targeted the plaintiff in California. TDF does not allege wrongful conduct by DBC in California, much less wrongful conducted that targeted TDF. Even if *Dole Food* was more procedurally akin to the instant case, TDF still glosses over the substantial number of California contacts giving rise to specific jurisdiction in that case.

The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF, which are what gave rise to this action, and none of which took place in or were directed at California. The only other contacts that courts in this and other jurisdiction have found to bear on a jurisdictional inquiry in an action for a declaration of non-infringement are licensing activities within the forum state. In those instances, the courts have suggested licensing activity may support personal jurisdiction only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions. *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*, 2008 WL 7071464, at *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45 F.3d 1541. DBC's objections are valid and well founded, and should not be withdrawn. However, DBC did not rely on its objections in its response to Request for Production No.6, where it stated that there are no license agreements with California-based companies pertaining to the products at issue in this case.

Finally, even if TDF is correct that contacts, such as DBC's product sales, trade show participation, and corporate travel in California are relevant, DBC has provided that information. TDF's additional discovery requests extend beyond the

facts it needs to establish specific jurisdiction and are merely harassing. Because "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," the Court should deny Plaintiff's motion to compel. *See Martinez*, 764 F.3d at 1070.

### 2. Interrogatory No. 3

INTERROGATORY NO. 3:

Identify all trademark or trade dress enforcement activities relating to the PRODUCTS that YOU have undertaken that have occurred in or relate to California, including but not limited to the following: using investigators, customs agents, or attorneys to perform investigations, send cease and desist letters, or attend trade shows.

RESPONSE TO INTERROGATORY NO. 3:

DBC objects to this interrogatory because it is overly broad, unduly burdensome, vague and ambiguous, not limited in time or proportional to the needs of the case, and seeks information that is irrelevant to the issue of personal jurisdiction. DBC further objects to this interrogatory because it seeks information that is protected by the work product doctrine and attorney-client privilege. Subject to its objection, and to the extent it understands this interrogatory, DBC states that there are no trademark or trade dress enforcement activities that have occurred in or relate to California.

### a. TDF's Contentions Regarding Interrogatory No. 3

TDF does not understand how this interrogatory is "overly broad, unduly burdensome, vague and ambiguous, not limited in time or proportional to the needs of the case" and does not understand the qualifier "to the extent it understands this interrogatory." DBC's enforcement activities of its trademark or trade dress relating to its products that have occurred in or relate to California is directly relevant to the issue of personal jurisdiction in this action. Thus, all objections and the qualifier should be withdrawn.

**b.**   **DBC's Contentions Regarding Interrogatory No. 3.**

TDF's discovery request is overbroad and unduly burdensome because it is not limited in time, and thus seeks information that would no longer exist under reasonable record retention policies.  The request is vague and ambiguous because it is not possible for DBC to discern what is meant by enforcement activities "relating" to California.  The request is not narrowly tailored to the issues relevant to personal jurisdiction.

The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF, which are what gave rise to this action, and none of which took place in or were directed at California.  On occasion, courts in this and other jurisdiction have found licensing activities within the forum state to bear on a jurisdictional inquiry in an action for a declaration of non-infringement, but only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions.  *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*, 2008 WL 7071464, at *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45 F.3d 1541.  DBC's objections are valid and well founded, and should not be withdrawn.  However, DBC did not rely on its objections in its response to Request for Production No.6, where it stated that there are no license agreements with California-based companies pertaining to the products at issue in this case.

DBC understands this request to seek identification of all instances where it has used an investigator, customs agent, attorney, or other similar person or entity in California to perform investigations, send cease and desist letters, attend trade

shows, or perform other similar functions in California. Based on that understanding, DBC believes that it has, in good faith, fully responded to this request with all information of which it is aware at this time in its initial response to this request.  Furthermore, DBC has already provided its product sales, trade show participation, and corporate travel in California, of which it is aware.  If those contacts are found to be relevant, then TDF's additional discovery requests extend beyond the facts it needs to establish specific jurisdiction and are merely harassing. Because "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," the Court should deny Plaintiff's motion to compel.  *See Martinez*, 764 F.3d at 1070

### 3.    Interrogatory No. 5

INTERROGATORY NO. 5:

Identify all travel by DBC employees, board members, executives, or contractors to California related to YOUR business, including in the identification the person or persons who traveled to California, the dates on which the travel occurred, the location or locations to which the person(s) traveled, the reason for the travel, and any persons or companies visited.

RESPONSE TO INTERROGATORY NO. 5:

DBC objects to this interrogatory because it is overly broad, vague and ambiguous, not limited in time or proportional to the needs of the case, and unduly burdensome given the allotted time to respond to these interrogatories. DBC further objects to this interrogatory because it seeks information that is irrelevant to the issue of personal jurisdiction, and to the extent it seeks information that is protected by the work product doctrine and attorney-client privilege. DBC further objects to this interrogatory to the extent it seeks identification of DBC customers, pricing information, profit margins, or other similar proprietary and confidential business information, which is irrelevant to the issue of personal jurisdiction and otherwise subject to an appropriate protective order.

1    Subject to its objections, DBC states that it has limited its inquiry to travel of

2  DBC executives and employees to California related to the PRODUCTS, and that

3  while it is not possible for DBC to identify every instance of travel in the time

4  allotted to respond to these interrogatories, those it has identified are documented

5  in spreadsheets being produced in response to the requests for production as DBC

6  000293-000295.

7         **a.    TDF's Contentions Regarding Interrogatory No. 5**

8    TDF does not understand how this interrogatory is "overly broad, unduly

9  burdensome, vague and ambiguous, not limited in time or proportional to the needs

10  of the case." TDF is entitled to the identity of customers met with, and their

11  locations in California to the extent the customer meeting involved or related to the

12  product embodying DBC's trade dress. By entering the State of California in order

13  to meet with such California customers regarding its product, DBC directs

14  activities at California residents. Such directed activities related to the trademark

15  at California is relevant to the personal jurisdiction issue. *See Delphix Corp. v.*

16  *Embarcadero Techs., Inc.*, 749 Fed. Appx. 502, 506 (9th Cir. 2018) (finding that

17  defendant's conduct was directed at plaintiff in California when the defendant

18  challenged plaintiff's right to use its mark during settlement talks in California);

19  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (concluding that

20  the defendant's actions were "expressly aimed" at California because the defendant

21  "knew that Dole's principal place of business was in California, knew that the

22  decisionmakers for Dole were located in California, and communicated directly

23  with those California decisionmakers"). In *Solar Gear Inc. v. Sunglass Hut*

24  *International Inc.*, the plaintiff sought, among other things, a "declaratory

25  judgment regarding its right to federal trademark registration for the mark SUN

26  GEAR in connection with sun protection products" after the defendant began

27  promoting sun protection lotion under the same name in California. No. C–93–

28  20931 RMW, 1994 WL 587237, at *3 (N.D. Cal. May 24, 1994). In that case, the

court found that the defendant directed its product and trademark to the California market because, like DBC, it "deliberately created the distribution scheme whereby products bearing the mark [at issue] were sold in California" and "permitted its mark [] to be used in California." *Id.* Thus, DBC's sales to California customers, including their identities as well as the location of their headquarters and state of incorporation, are relevant here.

Furthermore, DBC provided evidence that one of its representatives traveled to California to purchase machinery. DBC should further provide more specifics as to the purchase and whether that machinery was used to manufacture the products embodying its trade dress.

As set forth above, at the conference of counsel, TDF proposed to resolve issues related to confidentiality issues. To the extent this response implies the disclosure of confidential information, such as pricing information or specific terms of sale, the Stipulated Protective Order entered with the Court should resolve any such issues.

Thus, DBC should withdraw all objections and qualifiers to TDF's jurisdictional discovery requests and, to the extent DBC objected to TDF's discovery requests on confidentiality grounds, DBC should produce such relevant documents in accordance with the Protective Order.

### b.    DBC's Contentions Regarding Interrogatory No. 5.

TDF's discovery request is overbroad and unduly burdensome because it is not limited in time, and thus seeks information that may no longer exist under reasonable record retention policies. The request is not limited to travel related to the products at issue, and therefore is overbroad. The request is vague and ambiguous for several reasons, but primarily because the defined term YOUR includes a host of entities and individuals, including DBC's attorneys. As a result, the request conceivable includes information related to the travel of DBC's attorneys (or past employees, etc.) related solely to the business of the attorneys (or

1  current business of past employees, etc.), and not the business of DBC. The
2  request is not narrowly tailored to the issues relevant to personal jurisdiction.

3      TDF's contention that DBC's travel to California is relevant to the issue of
4  personal jurisdiction in this "trade dress case" fails for two reasons. First, TDF's
5  views the scope of its claim too broadly, and ignores the declaratory posture of the
6  action. TDF asks the court to analyze the claim as if it were an claim brought by
7  DBC against an infringer instead of what it truly is – which is an action brought by
8  an alleged infringer seeking a declaration to the contrary. TDF's declaratory
9  judgment action arises from and is a result of its own alleged tortious conduct, not
10 that of DBC, and DBC's only actions that are conceivably relevant to a personal
11 jurisdiction determination on those claims are its efforts to police and enforce its
12 trademark rights *vis a´ vis* TDF. TDF's complaint does not allege any wrongdoing
13 by DBC in California. In order to satisfy its jurisdictional burden, TDF must
14 demonstrate a <u>specific nexus</u> between DBC's enforcement of its mark and TDF's
15 California-based suit. Second, TDF's argument glazes over the fact that DBC's
16 mark is federally registered, thus the requisite "use in commerce" need not occur in
17 California in order to maintain its rights and warrant nationwide trademark
18 protection under federal law. DBC sells its products nationwide and around the
19 world, which negates the relevance of any California sales or instances of travel to
20 California related to DBC's business.

21      The authority cited by TDF is distinguishable. *Delphix Corp. v.*
22 *Embarcadero Techs., Inc.*, 749 F. App'x 502 (9th Cir. 2018) involved a dispute
23 between two parties that were headquartered, located and operating in California,
24 at least at the time the challenged conduct occurred. *Id*. at 506. Even though the
25 defendant had moved its headquarters to Texas at the time of suit, the defendant
26 was subject to general jurisdiction because its principal place of business had been
27 California for several years leading up to the lawsuit. *Id*. Accordingly, there was
28 no dispute as to where the actions were directed as the court noted that "every

aspect of the case – from the parties to the underlying disputed rights – is completely centered in California". *Id.* There is no dispute in this case that DBC is a Mississippi corporation, headquartered in Mississippi, residing in Mississippi, and with no corporate presence in California. Thus, the *Delphix* holding is inapposite. In *Solar Gear Inc. v. Sunglass Hut Int'l Inc.*, No. C-93-20931 RMW, 1994 WL 587237 (N.D. Cal. May 24, 1994), the defendant – not the plaintiff – was the alleged infringer and its allegedly tortious conduct took place in California, through a wholly owned California-based subsidiary. Importantly, *Solar Gear* did not involve an action for declaratory judgment of non-infringement, so court's analysis of personal jurisdiction was centered on infringement activity of the defendant instead of the plaintiff, as is the case here. *Id.* Likewise, *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002), did not involve an action for declaratory judgment of non-infringement, but instead focused on the acts individual defendants who engaged in wrongful conduct that targeted the plaintiff in California. TDF does not allege wrongful conduct by DBC in California, much less wrongful conducted that targeted TDF. Even if *Dole Food* was more procedurally akin to the instant case, TDF still glosses over the substantial number of California contacts giving rise to specific jurisdiction in that case.

The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF, which are what gave rise to this action, and none of which took place in or were directed at California. The only other contacts that courts in this and other jurisdiction have found to bear on a jurisdictional inquiry in an action for a declaration of non-infringement are licensing activities within the forum state. In those instances, the courts have suggested licensing activity may support personal jurisdiction only where the licensing agreements obligate or give the licensee defendant the right to pursue the enforcement actions. *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction

1   exists in this context, 'our case law requires that the license agreement contemplate

2   a relationship beyond royalty or cross-licensing payment, such as granting both

3   parties the right to litigate infringement cases or granting the licensor the right to

4   exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*,

5   2008 WL 7071464, at *4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45

6   F.3d 1541.   DBC's objections are valid and well founded, and should not be

7   withdrawn.  However, DBC did not rely on its objections in its response to Request

8   for Production No.6, where it stated that there are no license agreements with

9   California-based companies pertaining to the products at issue in this case.

10       Finally, even if TDF is correct that contacts, such as DBC's product sales,

11  trade show participation, and corporate travel in California are relevant, DBC has

12  provided that information, to the extent it is known by and available to DBC.  DBC

13  has, in good faith, fully responded to this request.  Any information related to the

14  purchase of equipment in California falls outside the scope of TDF's discovery

15  requests.  TDF's additional discovery requests extend beyond the facts it needs to

16  establish specific jurisdiction and are merely harassing.  Because "further

17  discovery would not demonstrate facts sufficient to constitute a basis for

18  jurisdiction," the Court should deny Plaintiff's motion to compel.  *See Martinez*,

19  764 F.3d at 1070.

20              **4.    Interrogatory No. 6**

21  INTERROGATORY NO. 6:

22       Identify all trade shows in California that DBC employees, board members,

23  executives, or contractors attended or participated in, or at which DBC exhibited

24  the PRODUCTS, including in the identification the trade show, the dates of the

25  trade show, the location of the trade show, the person or persons who attended the

26  trade show, and whether or not the PRODUCTS were exhibited at the trade show.

27  RESPONSE TO INTERROGATORY NO. 6:

28       DBC objects to this interrogatory because it is overly broad, vague and

ambiguous, not limited in time or proportional to the needs of the case, and unduly burdensome given the allotted time to respond to these interrogatories. DBC further objects to this interrogatory because it seeks information that is irrelevant to the issue of personal jurisdiction. DBC further objects to this interrogatory to the extent it seeks identification of DBC customers, pricing, profit margins, or other similar proprietary and confidential business information, which is irrelevant to the issue of personal jurisdiction and otherwise subject to an appropriate protective order.

Subject to its objection, DBC has limited its search to exhibition at, attendance of, or participation in any trade show in California from the year 2014 - present, and while it is not possible for DBC to identify every such trade show in the time allotted to respond to these requests, those it has identified are being produced herewith as DBC 000296-000299, and DBC 000293-000295.

### a.    TDF's Contentions Regarding Interrogatory No. 6

Contractual terms regarding DBC's displays or booths at California trade shows are relevant to determine whether those agreements contain terms related to the asserted trade dress or intellectual property.  As set forth above, at the conference of counsel, TDF proposed to resolve any confidentiality issues related to this request by entering into the Court's exemplar protective order and agreeing to allow redaction of price information or specific terms of sale as it relates to its any contract or agreement in connection with attending or exhibiting at a trade show.

### b.    DBC's Contentions Regarding Interrogatory No. 6.

TDF's discovery request is overbroad and unduly burdensome because it is not limited in time, and thus seeks information that may no longer exist under reasonable record retention policies.  The request is not narrowly tailored to the issues relevant to personal jurisdiction.

TDF's contention that DBC's attendance at trade shows in California is

relevant to the issue of personal jurisdiction in this "trade dress case" fails for two reasons.  First, TDF's views the scope of its claim too broadly, and ignores the declaratory posture of the action.   TDF asks the court to analyze the claim as if it were an claim brought by DBC against an infringer instead of what it truly is – which is an action brought by an alleged infringer seeking a declaration to the contrary.  TDF's declaratory judgment action arises from and is a result of its own alleged tortious conduct, not that of DBC, and DBC's only actions that are conceivably relevant to a personal jurisdiction determination on those claims are its efforts to police and enforce its trademark rights *vis a´ vis* TDF.  TDF's complaint does not allege any wrongdoing by DBC in California.  In order to satisfy its jurisdictional burden, TDF must demonstrate a <u>specific nexus</u> between DBC's enforcement of its mark and TDF's California-based suit.   Second, TDF's argument glazes over the fact that DBC's mark is federally registered, thus the requisite "use in commerce" need not occur in California in order to maintain its rights and warrant nationwide trademark protection under federal law.  DBC sells its products nationwide and around the world, which negates the relevance of any California sales or instances of travel to California related to DBC's business.

The authority cited by TDF is distinguishable.  *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502 (9th Cir. 2018) involved a dispute between two parties that were headquartered, located and operating in California, at least at the time the challenged conduct occurred. *Id*. at 506.  Even though the defendant had moved its headquarters to Texas at the time of suit, the defendant was subject to general jurisdiction because its principal place of business had been California for several years leading up to the lawsuit.  *Id*. Accordingly, there was no dispute as to where the actions were directed as the court noted that "every aspect of the case – from the parties to the underlying disputed rights – is completely centered in California". *Id.*  There is no dispute in this case that DBC is a Mississippi corporation, headquartered in Mississippi, residing in Mississippi,

and with no corporate presence in California.   Thus, the *Delphix* holding is inapposite.   In *Solar Gear Inc. v. Sunglass Hut Int'l Inc.*, No. C-93-20931 RMW, 1994 WL 587237 (N.D. Cal. May 24, 1994), the defendant – not the plaintiff – was the alleged infringer and its allegedly tortious conduct took place in California, through a wholly owned California-based subsidiary.   Importantly, *Solar Gear* did not involve an action for declaratory judgment of non-infringement, so court's analysis of personal jurisdiction was centered on infringement activity of the defendant instead of the plaintiff, as is the case here.   *Id.*   Likewise, *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002), did not involve an action for declaratory judgment of non-infringement, but instead focused on the acts individual defendants who engaged in wrongful conduct that targeted the plaintiff in California.   TDF does not allege wrongful conduct by DBC in California, much less wrongful conducted that targeted TDF.   Even if *Dole Food* was more procedurally akin to the instant case, TDF still glosses over the substantial number of California contacts giving rise to specific jurisdiction in that case.

The contacts that are relevant to a jurisdictional determination here are those related to DBC's efforts to police and enforce is trademark rights against TDF, which are what gave rise to this action, and none of which took place in or were directed at California.   The only other contacts that courts in this and other jurisdiction have found to bear on a jurisdictional inquiry in an action for a declaration of non-infringement are licensing activities within the forum state.   In those instances, the courts have suggested licensing activity may support personal jurisdiction only where the licensing agreements obligate or give the licensee defendant the right to pursue enforcement the actions.   *See, e.g.*, *Vacless Sys., Inc.*, 2011 WL 13217924, at *8 ("[I]n determining whether specific personal jurisdiction exists in this context, 'our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to

1    exercise control over the licensee's sales or marketing activities.'"); *Autogenomics*,
2    2008 WL 7071464, at \*4; *Red Wing Shoe*, 148 F.3d at 1360-62; *Akro Corp.*, 45
3    F.3d 1541.   DBC's objections are valid and well founded, and should not be
4    withdrawn.   However, DBC did not rely on its objections in its response to Request
5    for Production No.6, where it stated that there are no license agreements with
6    California-based companies pertaining to the products at issue in this case.

7          Finally, even if TDF is correct that contacts, such as DBC's product sales,
8    trade show participation, and corporate travel in California are relevant, DBC has
9    provided that information, to the extent it is known by and available to DBC.   DBC
10   has, in good faith, fully responded to this request.    TDF's additional discovery
11   requests extend beyond the facts it needs to establish specific jurisdiction and are
12   merely harassing.   Because "further discovery would not demonstrate facts
13   sufficient to constitute a basis for jurisdiction," the Court should deny Plaintiff's
14   motion to compel.  *See Martinez*, 764 F.3d at 1070.

15   **IV.    Concluding Statements**

16          **A.    TDF's Conclusion**

17          The interrogatories and document discovery requests from TDF seek
18   relevant information in DBC's possession, custody, or control.   They are
19   proportional to the needs of this case in determining whether DBC is subject to
20   personal jurisdiction in California.   DBC responded to certain requests with
21   baseless objections and redactions alleging that the information sought was
22   irrelevant to the issue of personal jurisdiction, confidential in nature, or both.
23   However, if confidentiality was a concern, DBC could have prepared a Protective
24   Order and responded accordingly.   Instead, DBC refused to produce any
25   responsive documents to TDF's legitimate discovery requests.   In addition, when
26   attempting to seek such information from potentially relevant third parties, DBC
27   moved to quash those subpoenas the day before the production deadline.

28          This Court should order DBC to produce all responsive information and

1  documents in accordance with the stipulated Protective Order.

2      TDF respectfully requests the Court grant its motion to compel.

3      **B.  DBC's Conclusion**

4       TDF's overbroad discovery requests seek information and documents

5  clearly unrelated to the narrow issue of whether there is a specific nexus between

6  DBC's enforcement of its mark and TDF's California-based suit, such that DBC

7  should be subject to personal jurisdiction in TDF's declaratory judgment action.

8  The parties clearly have differing views about the jurisdictional limitations in an

9  action for a declaratory judgment of non-infringement, and of the scope of

10  permissible jurisdictional discovery, which are issues of law.  DBC has raised valid

11  objections to the nature and scope of TDF's overbroad, merits-based discovery

12  requests, but TDF has refused to narrow the scope of its requests in any meaningful

13  way.   TDF falsely claims that DBC has failed to produce <u>any</u> responsive

14  documents, but in truth DBC has produced over 300 pages of documents that could

15  be potentially relevant to the jurisdictional inquiry.  Even though a protective order

16  potentially remedies DBC's concerns regarding confidentiality, the relevancy of

17  TDF's discovery requests is an issue the still lingers.   The scope of jurisdictional

18  discovery in this case turns on an issue of law that that should be decided by this

19  Court before any further discovery takes place.

20      Accordingly, DBC respectfully requests the Court deny TDF's motion to

21  compel.

22  DATED:  June 11, 2019          HAYNES AND BOONE, LLP

23                  By:   /s/Jennifer M. Lantz
                        Jennifer M. Lantz
24                      Attorneys for Plaintiff
                        TABLE DE FRANCE, INC.
25

26
                        By:   /s/ Jeffrey M. Singletary
27                          Jeffrey M. Singletary
                            Attorneys for Defendant
28                          DBC CORPORATION